186 N.J. Super. 156 (1982)
451 A.2d 990
JACKSON TOWNSHIP MUNICIPAL UTILITIES AUTHORITY, A PUBLIC BODY CREATED OR ORGANIZED PURSUANT TO N.J.S.A. 40:14B-1, ET SEQ., PLAINTIFF,
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY; MERCHANTS MUTUAL INSURANCE COMPANY; INSURANCE COMPANY OF NORTH AMERICA; HARLEYSVILLE MUTUAL INSURANCE COMPANY; ROYAL GLOBE INSURANCE COMPANY; NEWARK INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division Ocean County.
Decided August 20, 1982.
*158 Alan Pogarsky for plaintiff (Pogarsky & Louis, attorneys).
Charles E. Starkey for defendant Hartford Accident and Indemnity Company (Starkey, Kelly, Cunningham, Blaney & White, attorneys).
Michael Barker for defendant Merchants Mutual Insurance Company (Horn, Kaplan, Goldberg & Gorny, attorneys).
Bruce A. Gunther for defendant Insurance Company of North America (Yampell & Cosentino, attorneys).
Lawrence McHeffy for defendant Harleysville Mutual Insurance Company (Hanlon, Dempsey & McHeffy, attorneys).
Granville D. Magee for defendants Royal Globe Insurance Company and Newark Insurance Company (Magee, Kirschner & Graham, attorneys).
HAVEY, J.S.C.
Plaintiff Jackson Township Municipal Utilities Authority (Jackson M.U.A.) initiated this action for declaratory judgment pursuant to N.J.S.A. 2A:16-50 et seq., against defendants Hartford Accident and Indemnity Company, Merchants Mutual Insurance Company, Insurance Company of North America, Harleysville Mutual Insurance Company, Royal Globe Insurance Company and Newark Insurance Company. The issue raised is: Does a general liability insurance carrier owe to its insured, a municipal utilities authority, a duty to defend and indemnify when the authority has been charged with negligently contaminating and polluting ground water, causing property damage and personal injury?
Plaintiff Jackson M.U.A. functions pursuant to the provisions of N.J.S.A. 40:14B-1 et seq. As part of its operation it collects from its system liquid waste and hauls and dumps the waste at designated landfills. Plaintiff has been named as a third-party defendant in two actions initiated by residents of the Legler section of Jackson Township, Ocean County, New Jersey. The first action was instituted in the United States District Court, entitled Adelung v. Township of Jackson, filed in August 1979, *159 Docket 79-2613. The second action, entitled Ayers v. Township of Jackson, was filed in the Superior Court, Law Division, Ocean County, in October 1980, Docket L-5808-80. Both actions are still pending. In each the plaintiff residents allege that Jackson Township acquired a landfill in 1972 and was negligent in the selection of the landfill site and in the design and maintenance of the landfill, resulting in the seepage of pollutants into the Cohansy aquifer. It is alleged that this caused contamination of the residents' ground water, resulting in personal injury and property damage. The township has joined Jackson M.U.A. as a third-party defendant as well as 20 other companies, haulers and other public entities, alleging that these parties deposited dangerous toxic wastes in the landfill which caused the pollution. Specifically, the township charges that Jackson M.U.A. knew, or in the reasonable exercise of foresight, should have known that liquid waste would leach through the soil and contaminate the residents' wells. Jackson M.U.A. as well as the other haulers are alleged to have deposited the liquid waste "in and around the landfill continuously from prior to the date the landfill was opened until the present." From the pleadings and oral argument, there appears to be a significant question as to whether the liquid waste dumped by Jackson M.U.A. contained industrial waste or was collected exclusively from residential dwellings. It is charged with intentional wrongdoing, nuisance and trespass, as well as negligence. The township seeks contribution, indemnification and damages for the cost of the installation of a public water system which was installed by the township in order to provide water free of pollutants, as well as other damages.
General liability coverage was provided to plaintiff by defendant Hartford Accident and Indemnity Company from February 1, 1971 through February 1, 1977; by defendant Insurance Company of North America from February 1, 1977 to February 1, 1978, and by defendant Harleysville Mutual Insurance Company from February 1, 1978 to June 13, 1980. Each policy insured against claims for bodily injury or property damage caused by *160 an occurrence. All of the policies define "occurrence" as meaning an accident, including bodily injury or property damage "neither expected or intended from the standpoint of the insured." Except for the Hartford policy for the year February 1, 1972 to February 1, 1973, each policy contains what is commonly known as a pollution exclusion clause which reads as follows:
This policy does not apply
... to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.
Jackson M.U.A. moves for partial summary judgment, arguing that from the terms of the policy, the carriers owe a defense in light of the allegations of the third-party complaint that contamination occurred during a period of time the policies were in effect. It argues that there is no genuine issue as to any material fact challenged and, therefore, it is entitled to an order requiring the carriers to assume its defense as a matter of law. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75 (1954). Hartford, Insurance Company of North America and Harleysville cross-move for summary judgment arguing that the pollution exclusion clause is applicable, since the alleged occurrence of bodily injury and property damage arose out of the discharge of pollutants and was not sudden and accidental.
A liability insurer's duty to defend comes into being when the complaint against the insured states a claim constituting a risk insured against, and that duty is not excused because the claim cannot be maintained against the insured either in law or in fact. Danek v. Hommer, 28 N.J. Super. 68 (App.Div. 1953), aff'd 15 N.J. 573 (1954). As stated in Danek:
Liability of the insured to the plaintiff is not the criterion; it is the allegation in the complaint of a cause of action which, if sustained, will impose a liability covered by the policy.
So in the resolution of the problem, the complaint should be laid alongside the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment, and in reaching a conclusion, doubts should be resolved in favor of the insured. Appleman, supra, § 4683, 1953 Pocket Part. [28 N.J. Super. at 77].
*161 If there exists a problem of construction of the policy, that is, if the controlling language will support two meanings, one favorable to the insured and the other favorable to the insurer, the interpretation sustaining coverage must be applied. Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7, 8 (1961). As stated in Mazzilli:
Moreover, in evaluating the insurer's claim as to the meaning of the language under study, courts necessarily consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question; also whether judicial decisions appear in the reports attributing a more comprehensive significance to it than that contended for by the insurer. [at 7].
And if the clause in question is one of exclusion, designed to limit the protection, a strict interpretation of that clause is applied. Mazzilli, at 8.
Beyond these universal rules of construction, the court must look at the pertinent clause in the policy from what it conceives to be the reasonable expectations of the average purchaser in light of the language of the policy. Linden Motor Freight Co. Inc. v. Travelers Ins. Co., 40 N.J. 511, 524-525 (1963).
Is the language of the pollution exclusion clause free of ambiguity and sufficiently clear, so that the average purchaser of a policy would reasonably expect that the claims arising out of the dumping of liquid waste at the landfill by the M.U.A. would be excluded from coverage?
An identical pollution exclusion clause was held inapplicable in Lansco, Inc. v. Environmental Protec. Dep't, 138 N.J. Super. 275 (Ch.Div. 1975), aff'd 145 N.J. Super. 433 (App.Div. 1976), certif. den. 73 N.J. 57 (1977). An oil spill from Lansco tanks caused by the intentional acts of vandals resulted in damage to the Hackensack River and other bodies of water, and the D.E.P. required Lansco to clean up the spill pursuant to N.J.S.A. 58:10-23.4 et seq., and N.J.S.A. 23:5-28 et seq. Lansco sought by declaratory judgment an order to compel its general liability carrier to defend any claim by the State and indemnify Lansco for the cost of clean-up. The court found a duty to defend and indemnify, holding that the spillage was sudden and accidental notwithstanding *162 that it was caused by the intentional acts of third parties. It noted that the common meaning of "sudden" is "happening without previous notice or on very brief notice; unforeseen; unexpected; unprepared for. Webster's New International Dictionary, (2 ed. unabr. 1954); Black's Law Dictionary, (4 ed. 1968)," and stated that
... whether the occurrence is accidental must be viewed from the standpoint of the insured, and since the oil spill was neither expected nor intended by Lansco, it follows that the spill was sudden and accidental under the exclusion clause even if caused by the deliberate act of a third party." [Id. at 282; emphasis supplied].
The pollution exclusion clause has been the subject of significant judicial holdings and comments in other jurisdictions. In Molton, Allen and Williams, Inc. v. St. Paul F. & M. Ins., 347 So.2d 95 (1977), the Alabama Supreme Court noted that St. Paul's exclusion clause was the same as found in Standard Provisions for General Liability Insurance. See 3 Long, Law of Liability Insurance, App. 30, App. 58 and App. 68 (1936). The comment made by Long regarding the clause states:

Pollution: Exclusion (f) is new. It eliminates coverage for damages arising out of pollution or contamination, where such damages appear to be expected or intended on the part of the insured and hence are excluded by definition of "occurrence." [Id. at 98, 99; emphasis supplied].
The court in Molton held that the clause, the same as found in the policies issued by the carriers in this action, was ambiguous and intended to cover only industrial pollution and contamination and not an insured who was charged with negligently causing sand and dirt to pass from his subdivision on his neighbor's property.
In Farm Family Mut. Ins. Co. v. Bagley, 64 App.Div.2d 1014, 409 N.Y.S.2d 294 (1978), the New York Supreme Court, Appellate Division, found that the pollution exclusion clause was inapplicable to an insured sued for damages arising out of the insured spraying chemicals on his oat field which carried to his neighbor's land. In finding a duty to defend, the court noted that the inquiry should be whether, viewing the casualty from the perspective of the insured, it was unexpected, unusual and unsafe. It held that although the discharge of the toxic chemical was an intentional act on the part of the insured, the *163 dispersal (scattering) of the spray which found its way on to the neighbor's property was unexpected and not intended to cause injury or harm and, therefore, was sudden and accidental.
In Allstate Ins. Co. v. Klock Oil Co., 73 App.Div.2d 486, 426 N.Y.S.2d 603 (App.Div. 1980), the insured was sued in an action alleging negligent installation and maintenance of a gasoline storage tank resulting in an escape of gasoline therefrom. The court noted that the exclusion clause was statutorily mandated in the State of New York and reflected a public policy to encourage a cleaner environment by eliminating the opportunity for industry to spread the risk of loss it causes by pollution. In holding that the clause did not apply it stated:
If there was no intent to cause harm then any injury resulting from ordinary negligence is considered to be accidental. The "accident" is simply the undesigned event and the natural and ordinary consequences of a negligent act are not precluded. [at 605].
In Niagara Cty. v. Utica Mut. Ins. Co., 103 Misc.2d 814, 427 N.Y.S.2d 171 (Sup.Ct. 1980), involving the Love Canal claims in the State of New York, the court held that the pollution exclusion clause was ambiguous and did not apply to the County of Niagara and that, therefore, the claims against the county arising out of the discharge and dumping of chemical waste within the county must be defended by the county's liability carriers. It noted the legislative history of § 46(13) and (14) of the Insurance Law indicated that "the pollution exclusion was solely meant to deprive active polluters of coverage." Id. at 174. It found that the clause was ambiguous and, as such, must be construed so as to afford coverage.
In Barmet of Indiana v. Security Ins. Group, 425 N.E.2d 201 (Ind. Ct. App. 1981), the pollution exclusion clause was found to apply to an insured sued in a wrongful death action. It was claimed that the insured who recycled aluminum caused gases to escape from the plant causing reduced visibility which contributed to the cause of the accident resulting in decedent's death. But in Barmet the Court of Appeals relied upon the trial court's findings that the insured's emissions of gases occurred on a regular basis and the company had received numerous complaints *164 but continued to operate its system. It therefore found that the occurrence could not be sudden and accidental.
Thus, almost unanimously, the courts in other jurisdictions go one step beyond Lansco, Inc. v. Environmental Protec. Dep't, supra, in finding that the pollution clause is ambiguous. In Lansco the occurrence was sudden and accidental because the event was unexpected, whereas in each of the other cases the court held the occurrence to be sudden and accidental because the result or injury was unexpected or unintended.
When viewed in light of the case law cited, the clause can be interpreted as simply a restatement of the definition of "occurrence"  that is, that the policy will cover claims where the injury was "neither expected nor intended." It is a reaffirmation of the principle that coverage will not be provided for intended results of intentional acts but will be provided for the unintended results of an intentional act. Lyons v. Hartford Ins. Group, 125 N.J. Super. 239 (App.Div. 1973), certif. den. 64 N.J. 322 (1974). The chemical manufacturer or industrial enterprise who discharges, disburses or deposits hazardous waste material knowing, or who may have been expected to know, that it would pollute, will be excluded from coverage by the clause. The industry, for example, which is put on notice that its emissions are a potential hazard to the environment and who continues those emissions is an active polluter excluded from coverage. A municipal utilities authority, in the collection of liquid waste and the deposit of the waste in a township landfill, designated as authorized to accept the waste, is carrying out its public function. Viewed from the standpoint of the municipal utilities authority, the function of depositing the waste may have been intentional but it was never expected or intended that the waste would seep into the aquifer resulting in damage and injury to others. See Farm Fam. Mut. Ins. Co. v. Bagley, supra. An ambiguity thus exists. Alternative language in the clause to indicate that the act of depositing, if intentional, would exclude coverage regardless of whether the pollution is expected or intended, would have put the matter beyond reasonable question. *165 Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, supra, 35 N.J. at page 7.
Although the third-party complaint against plaintiff is unclear as to how many times it deposited waste at the site, the frequency of dumping is not dispositive of the issue of whether the occurrence was sudden or accidental. If the inquiry is, as it should be, whether the pleadings charged the insured with an act resulting in unintended or unexpected damage, then the act or acts are sudden and accidental regardless of how many deposits or dispersals may have occurred, and although the permeation of pollution into the ground water may have been gradual rather than sudden, the behavior of the pollutants as they seeped into the aquifer is irrelevant if the permeation was unexpected. See Travelers Indem. Co. v. Dingwell, 414 A.2d 220 (Me.Sup.Jud.Ct. 1980). As the court stated in Allstate Ins. Co. v. Klock Oil Co., supra:
Also the word "sudden" as used in liability insurance need not be limited to an instantaneous happening. McGroarty v. Great American Ins. Co., 43 A.D.2d 368, 351 N.Y.S.2d 428, aff'd. 36 N.Y.2d 358, 368 N.Y.S.2d 485, 329 N.E.2d 172). The term "sudden and accidental" must be construed in its relevant context. The relevant context to be considered is the fact that it is a term employed by an insurer in the contract and should be given the construction most favorable to the insured. Thus, regardless of the initial intent or lack thereof as it relates to causation, or the period of time involved, if the resulting damage could be viewed as unintended by the factfinder, the total situation could be found to constitute an accident.... [426 N.Y.S.2d at 605].
I find that the pollution exclusion clause can be interpreted so as to support a meaning favorable to plaintiff, Jackson M.U.A. I therefore find that the carriers owe a duty to defend. The fact that there are claims against the insured alleging intentional and willful actions does not excuse the carriers from their duty. If the claims are mixed or based on conflicting theories, one which requires coverage and one which does not, the carrier has no choice, it must defend. Mt. Hope Inn v. Travelers Indem. Co., 157 N.J. Super. 431 (Law Div. 1978).
The question of which carrier must indemnify for the occurrence or occurrences of pollution is a separate and perplexing question. In a companion unreported case, Jackson Tp. v. *166 American Homes Assur. Co., Docket L-29236-80, this court held that the carriers owed the Township of Jackson a duty to defend but that the question of indemnification should await the outcome of the main suit. The Appellate Division affirmed in an unreported opinion, Dockets A-170-81T3, A-502-81T3, A-503-81T3, A-504-81T3 and A-1294-81T3, as to the duty to defend but remanded for the purpose of having an "occurrence" plenary hearing, directing that the court make findings as to when the occurrence of pollution took place. Those findings would permit the court to determine during which term or terms of insurance the alleged occurrence took place in order to find which carriers owed a duty to indemnify. See Muller Fuel Oil Co. v. Ins. Co. of No. Amer., 95 N.J. Super. 564 (App.Div. 1967). Since the time of occurrence is of importance in this action as well, it should be consolidated with the Jackson Tp. v. American Homes Assur. Co. action.
Accordingly, partial summary judgment is granted in favor of plaintiff. Plaintiff is directed to move pursuant to R. 1:6-2 to consolidate this action with the Jackson Tp. v. American Homes Assur. Co., Docket L-29236-80.