**J.T. BAKER, INC., Plaintiff,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Defendant.**

**Civ. No. 86–4794(SSB).**

United States District Court,
D. New Jersey,
Camden Vicinage.

Feb. 14, 1989.

Regina A. Murray, Schaff, Motiuk, Gladstone, Moeller & Reed, Flemington, N.J. and Matthew L. Jacobs, Covington & Burling, Washington, D.C., for plaintiff.

Alan G. White, Harwood Lloyd, Hackensack, N.J., for defendant.

## OPINION AND ORDER

JEROME B. SIMANDLE, United States Magistrate:

In this case, plaintiff J.T. Baker, Inc., seeks a declaratory judgment that defendant Aetna Casualty and Surety Company is obligated to defend and indemnify it against bodily injury and property damage claims arising out of toxic waste contamination pursuant to comprehensive general liability policies issued by Aetna to Baker between 1976 and 1986. J.T. Baker, Inc., seeks indemnification with respect to claims arising against it at seven New Jersey sites, of which two were owned by Baker (Phillipsburg/Lopatcong plant site and Arlington Warehouse) and five were landfills to which Baker's wastes were allegedly transported and disposed of (Price's Landfill, Kin–Buc Landfill, Lone Pine Landfill, the SCP Carlstadt Site, and Harmony Township Landfill). A determination of the discovery motions presently before the court requires construction of the so-called expected/intended clause of the "occurrence" definition of comprehensive general liability policies of insurance, as now discussed.

On September 24, 1987, plaintiff filed a motion for partial summary judgment and for a protective order, before the Honorable Stanley S. Brotman. In its motion for summary judgment, plaintiff sought a legal interpretation, under New Jersey law, of a provision contained in the comprehensive general liability policies (CGL) which defines "occurrence"—the event which triggers coverage under each policy.

The CGL policies involved in this case contain the following clauses:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence

. . . .

. . . . .

"Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily or property damage neither expected nor intended from the standpoint of the insured. . . .

Defendants claim that the "neither expected nor intended" phrase excludes coverage for liability which is the result of conduct that plaintiff knew or should have known would cause environmental harm. Plaintiff argues that the expected/intended language bars coverage only if the insured acted with the specific intent to cause harm. This dispute formed the substance of the summary judgment motion.

Judge Brotman denied the plaintiff's summary judgment motion by Opinion and Order filed August 17, 1988. Judge Brotman noted that plaintiff's professed purpose in filing their summary judgment motion was to limit the scope of discovery. In fact, included in the motions for summary judgment was a motion by plaintiff for a protective order, pursuant to Fed.R.Civ.P. 26(c), and a motion by defendant to compel answers to interrogatories, pursuant to Fed.R.Civ.P. 37(a)(2). Upon denying plaintiff's motion for summary judgment, Judge Brotman instructed the parties to direct their discovery motions to me, and also stated that I was to examine the question of expected/intended language in light of existing New Jersey law.

According to plaintiff, its motion for a protective order concerns 96 of the 132 interrogatories still in dispute between the parties, set forth in a separate appendix. According to defendant, their interrogatories are divided into ten sections, five of which are in dispute. Of those, Section 5 deals with the Phillipsburg Plant; Section 6 deals with Price's Pit; Second 7 relates to Kin–Buc; Section 8 deals with the Carlstadt site; and Section 9 relates to the Lone Pine site. In reference to the four sites mentioned in Sections 6–9, the interrogatories are identical for each site. Aetna contends that its interrogatories are relevant and necessary to its defense that Baker either knew or should have known that its actions would have the consequences they did.

Baker's main objections to the Aetna interrogatories are twofold: (1) Firstly, it insists that under New Jersey law, the "neither expected nor intended" exclusionary language bars coverage only if the insured acted with the specific intent to cause harm. Baker maintains that what the insured "knew or should have known" is irrelevant, and therefore Aetna's interrogatories directed to that issue are overbroad and burdensome; (2) secondly, Baker insists that whatever construction this court gives to the "neither expected nor intended" clause, Aetna's interrogatories are still overly broad and burdensome because "they are not directed to particular products, hazardous wastes, or contamination. Nor are they limited to specific instances of contamination, disposal, or dispersal. Instead, they demand the identification of all documents, communications, and individuals with information regarding numerous manufacturing processes, products and tests." (Plaintiff's Memo at 4–5).

Baker notes that five of the seven sites at issue in the underlying claims against it were not owned or operated by it, but rather it allegedly generated waste which was disposed of at those sites, or it stored waste at them. Thus, Baker is now subject to strict liability provisions of the Compre-

hensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601, *et seq.*, because it may have generated waste at these sites. Therefore, Baker insists that the Aetna interrogatories dealing with these sites are irrelevant if premised on a "knew or should have known" theory because Baker's liability is strict regardless of fault under CERCLA.

Baker categorizes these interrogatories and its corresponding objections in its moving papers. Baker objects to Interrogatories 92, 134, 176 and 218 on the grounds that they are overbroad, in that they ask for the history of the title to any facility which generated trash for disposal at any of the contaminated sites, as well as the name of any person or entity who sold or leased the facility to Baker, and the history and personnel of any safety, quality control department, library and industrial hygiene department of every facility.

Interrogatories 94(k), 136(k), 178(k) and 220(k) are objected to by Baker, as they demand that for every Baker facility that ever generated waste materials for deposit at any one of the four waste deposit sites, Baker identify any hazardous waste which was not released, and the name, address and employer of any entity that had possession of each quantity of waste up to the present time.

Interrogatories 98, 140, 182 and 224 are objected to because they demand that Baker identify the generic name of any precursor chemicals or raw materials used in the manufacturing process that generated the waste transported to the off-site disposal facilities in the underlying claims. Baker insists that these interrogatories are irrelevant to Baker's intent, which Baker maintains is the only issue involved in this motion.

Interrogatories 106, 148, 190 and 232 are objected to because they regard Baker's knowledge of land surrounding or neighboring the waste sites. Baker states that it obviously had no control over where the State of New Jersey placed its toxic waste sites, so therefore these interrogatories are irrelevant.

Interrogatories 100, 142, 184, 226, 107, 149, 191, and 233 are objected to on the grounds that they seek details regarding tests that Baker may have performed on its wastes for any purpose whatsoever and the identity of persons with relevant knowledge of these tests. Baker objects to these because it feels they are irrelevant to the issue of whether Baker "expected or intended" its method of disposal to result in the consequences which occurred.

Interrogatories 60(b), 94, 136, 178, 220 and 55 are objected to on the grounds that they seek information unrelated to Baker's practices in handling or disposing of wastes.

Interrogatories 61–63, 108–110, 150–151, 192–194, and 234–236 are allegedly objectionable because all are based on whether Baker knew or should have known their disposal practices would result in various consequences, not those which are actually alleged to have occurred, but a uniform list of consequences which are repeated for each site without variation.

Interrogatories 64, 65, 72, 73, 111, 112, 153, 154, 195, 196, 237, and 238 are objected to on the grounds that they only seek circumstantial evidence regarding Baker's general experience with hazardous waste; they are not focused on complaints or awareness of damage at the sites in the underlying action.

Interrogatories 74–77 are objected to because they are not limited to the type of contamination involved in the underlying suits or damage from the hazardous wastes allegedly involved in the underlying suits.

Interrogatories 66–71, 113–118, 155–160, 197–202 and 239–244 are objected to on the grounds that they seek information regarding tests which Baker performed, but are not limited to the specific types of contamination involved in the underlying suits.

Lastly, Interrogatories 58, 93, 135, 177 and 219 are objected to because they ask about Baker's production formulation and/or manufacture of any product containing hazardous waste. Baker insists this inquiry is too broad, and should be narrowed to ask only about waste produced

**90**

by Baker, not any Baker product containing hazardous waste.

In response to plaintiff's motion for a protective order, and in support of their motion to compel, Aetna asserts that the interrogatory questions are relevant to Baker's state of mind, and are thus necessary to Aetna's defense that ·Baker either expected or intended the consequences which occurred. Aetna maintains that regardless of the version of "expected or intended" which this court adopts—either subjective or objective—the interrogatories are still relevant. These interrogatories, according to Aetna, seek information relevant to plaintiff's knowledge concerning its operation as it relates to hazardous waste, and thus are necessary to prove whether Baker had the requisite intent.

Secondly, Aetna contends that Baker's characterization of Aetna's interrogatories—as requesting information "on all manufacturing processes, all complaints and all testing regarding products and the sites at issue"—is inaccurate. Aetna states that its interrogatories are instead limited to specific chemicals and specific sites at issue.

*Discussion of Law*

■ Rule 26, Fed.R.Civ.P., allows discovery of all non-privileged material which is reasonably calculated to lead to the discovery of admissible evidence. Rule 26(c) allows a party to seek an order either limiting or precluding discovery in order to protect a person or a party from annoyance, embarrassment, oppression or undue burden or expense. The burden of persuasion is clearly on the party seeking the protective order, which must demonstrate a particular need for protection, not a broad allegation of harm unsubstantiated by specific examples. *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987); *United States v. Garrett,* 571 F.2d 1323, 1316, n. 3 (5th Cir.1978). Further, the harm must be significant, not trivial. *Cipollone, supra.* The party seeking the interrogatory must show specifically how, despite the broad

and liberal construction afforded the federal discovery rules, each interrogatory is either irrelevant or overly broad or burdensome. *Roesberg v. Johns–Manville Corp.,* 85 F.R.D. 292, 296 (E.D.Pa.1980). The court "is not required to sift through each interrogatory to determine the usefulness of the answer sought." *Roesberg, supra* at 297, quoting *Klausen v. Sidney Printing and Publishing Co.,* 271 F.Supp. 783, 784 (D.Kan.1967).

In the instant matter, plaintiff seeks to limit defendant's discovery of it to only that information necessary to prove that Baker had the specific intent to bring about the resulting consequences.

■ It is, of course, necessary to examine the law in New Jersey with respect to the "neither expected nor intended" clause of comprehensive liability policies. I agree with plaintiff's characterization of the existing law in this state construing the expected/intended clause. To demonstrate this exclusion, defendant Aetna will be called upon to prove that Baker either expected or intended that the harm in question would occur from its disposal of these wastes. The proper inquiry is what the subjective intent or expectation of the insured was, with respect to the results of its waste disposal scheme; what the insured "should have known" is irrelevant. What the insured actually intended and expected is central, as demonstrated in *Lyons v. Hartford Insurance Group,* 125 N.J.Super. 239, 310 A.2d 485 (App.Div.1973), *cert. den.,* 64 N.J. 322, 315 A.2d 411 (1974), and *Ambassador Insurance Co. v. Montes,* 147 N.J.Super. 286, 371 A.2d 292 (App.Div. 1977), *aff'd* on other grounds, 76 N.J. 477, 388 A.2d 603 (1978); *accord,* Annotation, *Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured,* 32 A.L.R.Fed. 957 (1984).

■ In New Jersey, coverage will be afforded to the insured where insurance policy exclusion language is ambiguous and a fair interpretation would allow coverage. *Allen v. Metropolitan Life Insurance Co.,* 44 N.J. 294, 208 A.2d 638 (1965); *Mazzilli*

v. Accident & Casualty Insurance Co., 35 N.J. 1, 7, 170 A.2d 800 (1961); *Kievit v. Loyal Protective Life Insurance Co.*, 34 N.J. 475, 170 A.2d 22 (1961). The "expected or intended" language is ambiguous, as other courts have found, *Patrons–Oxford Mutual Insurance Co. v. Dodge*, 426 A.2d 888, 891 (Me.1981), and *United Services Automobile Association v. Elitzky*, 358 Pa.Super. 362, 517 A.2d 982, 986 (1986) [also noting that the "vast majority" of courts have held that the expected/intended clause applies "if the insured acted with the specific intent to cause some kind of bodily injury or damage."]

Recent New Jersey cases are in accord with the view that the expected/intended exclusion will not preclude coverage for unintended results of the insured's acts. In *Jackson Township Municipal Utilities Authority v. Hartford Accident & Indemnity Co.*, 186 N.J.Super. 156, 451 A.2d 990 (Law Div.1982), the insurer asserted that coverage was precluded by the "sudden and accidental" clause of the standard CGL pollution exclusion policy, which clause is not presently in dispute here. That court, however, analogized that clause to the expected/intended clause of the "occurrence" definition presently in dispute. The *Jackson Township* court opined that the expected/intended clause was a "reaffirmation of the principle that coverage will not be provided for intended results of intentional acts but will be provided for unintended results of an intentional act," 186 N.J.Super. at 164, 451 A.2d 990. The *Jackson Township* opinion adopted the specific intent requirement of *Lyons, supra,* but injects curious language inconsistent with the notice of specific intent, writing:

> The chemical manufacturer or industrial enterprise who [sic] discharges, disburses [sic] or deposits hazardous waste material knowing, or *who may have been expected to know*, that it would pollute, will be excluded from coverage by the [pollution exclusion] clause.

*Id.* at 164, 451 A.2d 990 [emphasis added]. The phrase "may have been expected to know" does not find a precedent in the cases cited in *Jackson Township,* and the phrase has understandably generated much confusion. The phrase, standing alone, suggests that a manufacturer *without* actual knowledge that pollution would result is nonetheless excluded from coverage if it should have known that pollution would result. This is a negligence standard, unsupported by the hypothesis of *Jackson Township,* because, as the court pointed out, by example, the industry *"which is put on notice* that its emissions are a potential hazard to the environment and who continues those emissions is an active polluter excluded from coverage." *Id.* [emphasis added]. Thus, even under *Jackson Township,* actual notice of the potentially hazardous character of the emission or disposal of the waste must be shown before the expected/intended clause precludes coverage. The *Jackson Township* court concluded that, when viewed from the standpoint of the insured, "the function of depositing the waste may have been intentional, but it was never expected or intended that the waste would seep into the aquifer resulting in damage and injury to others." *Id.*

Similarly, the *Lansco* [1] case, although relied upon by Aetna, notes that the "occurrence" clause in CGL policies of the type at issue here, does not preclude coverage for intentional acts by third parties, so long as the environmental harm was neither expected nor intended by the insured. 138 N.J.Super. at 282, 350 A.2d 520.

Judge Brotman's opinion in *Township of Gloucester v. Maryland Casualty Co.*, 668 F.Supp. 394 (D.N.J.1987), did not fix the standard for interpreting the "expected or intended" clause. The *Township of Gloucester* opinion cited to *Jackson Township* for a proposition in dictum that "[t]he 'occurrence clause' will act to prohibit coverage where it is shown that the insured polluter knew or should have know of the ongoing pollution," *id.* at 401. The complaint in the underlying landfill closure ac-

1. *Lansco, Inc. v. Department of Environmental Protection,* 138 N.J.Super. 275, 350 A.2d 520, (Ch.Div.1975), *aff'd,* 145 N.J.Super. 433, 368 A.2d 363 (App.Div.1976), *Certif. denied,* 73 N.J. 57, 372 A.2d 322 (1977).

tion [*State of New Jersey v. GEMS*, Civil No. 84–152(B)] had alleged that the insured township, as an owner of the landfill, "knew or should have known" of the pollution damage from landfill seepage, but at times subsequent to the coverage of insurance policies in dispute. Because no allegation of such knowledge fell within the policy coverage periods, the insured could not be said to have had such knowledge and the exclusion for intentional acts was not triggered. It was unnecessary to determine the precise degree of knowledge required to preclude coverage, because *no* knowledge was alleged during the coverage periods.

What is "expected or intended" is different from that which was "reasonably foreseeable" or which "should have been known." An insurance policy exclusion for manufacturing activities which carry a risk of causing environmental harm, although not known or intended to cause harm in the insured's business conduct, would indeed create an exclusion swallowing the entire purpose of insurance protection for unintended consequences. Insurance is purchased and premiums are paid to indemnify the insured for damages caused by accidents, that is, for conduct not meant to cause harm but which goes awry. The insured may be negligent, indeed, in failing to take precautions or to foresee the possibility of harm, yet insurance coverage protects the insured from his own lack of due care. If the policy holder were to be told that the words of the "occurrence" definition excluding coverage for "expected or intended" damages actually mean that coverage is also lost for damage which a prudent person "should have" foreseen, there would be no point to purchasing a policy of liability insurance.

Of course, Aetna could have written a policy exclusion which denied coverage for the insured's acts if the insured "may have been expected to know that its acts would cause pollution, viewed from the standpoint of a reasonable man placed in the insured's position," as suggested in Aetna's Brief at 20. It did not do so. It may well be that an insured's denials of knowledge and intent become incredible in the face of what

was known throughout a community or an industry, in which case the factfinder may find actual knowledge and intent by the insured to cause harm. But the choice by Aetna of the words "expected or intended" have created an ambiguity which Aetna must live with. Coverage will not be excluded under New Jersey insurance law where reasonable contrary interpretations of policy terms defeat the exclusion and where "alternative or more precise language, if used [by the insurance drafters], would have put the matter beyond reasonable questions." *Mazzilli v. Accident & Casualty Insurance Co., supra,* 35 N.J. at 7, 170 A.2d 800.

■ As much as this court may agree with plaintiff's interpretation of New Jersey law with respect to the expected/intended defense, I am unable to restrict Aetna's discovery in the fashion suggested by Baker for several reasons. Firstly, to do so would be tantamount to granting plaintiff the partial summary judgment which Judge Brotman denied. Secondly, it is plain that, even under New Jersey law, many of Aetna's interrogatories would still be relevant to whether or not Baker had the specific intent to cause the resulting events; such intent can be shown by circumstantial evidence including Baker's knowledge and decision-making concerning the nature and character of its wastes and of its waste disposal systems. Lastly, although many of Aetna's interrogatories may be irrelevant to plaintiff's expectation and intent, they may be highly relevant to other issues in the case, such as damages, causation, or other elements of proof. Therefore, to preclude the defendants from taking the aforementioned discovery would be to go beyond protecting plaintiff and would prejudice defendant's ability to probe into Baker's denials of specific intent or expectation of harm.

On the other hand, Aetna has propounded voluminous interrogatories, of extreme breadth and diminished relevance. For example, questions calling for the employment history and all the personnel at each site in question, or information regarding each employee who handled toxic waste, as

well as some of the questions seeking circumstantial evidence, are clearly burdensome, and arguably irrelevant.

Rather than sift through each interrogatory to determine its relevance—see *Roesberg*—this court will set up parameters within which this discovery shall operate. I will call upon counsel to apply these parameters to this discovery dispute. Thereafter, if parties are still unable to resolve discovery disputes, they are free to seek court intervention in applying these guidelines. This court will define the scope of permissible discovery under Rule 26(f) within the following scope of discovery, and compel plaintiff to serve responsive answers within these parameters:

1. *Discovery should focus on the specific chemicals which allegedly contaminated the Philipsburg site and the specific hazardous wastes allegedly generated and shipped to the landfill sites.* Discovery into all of Baker's manufacturing processes would be overbroad at this time. Likewise, discovery into all Baker's waste disposal efforts would be overbroad. But where specific contaminants are alleged to have occurred at Philipsburg, or where specific wastes are alleged as a basis for Baker's liability as a generator at the landfill sites, discovery of such items may be highly relevant to Baker's knowledge and intent.

2. *Raw materials, suppliers and precursor chemicals in Baker's manufacturing processes have not been shown to be relevant, except if such chemicals are on-site contaminants at the Philipsburg plant.* The minutiae of such inputs into the manufacturing processes can otherwise yield little of relevance to issues in this case. If, for example, arsenic is an alleged on-site contaminant, then discovery germane to the acquisition, storage and use of arsenic at the plant would be permitted; such information is relevant to Baker's knowledge of potential harm to the site and the degree of intentionality, if any, in its handling and disposal of the chemical.

3. *Generally, discovery concerning disposal of hazardous wastes is more relevant than discovery concerning the production of such wastes.* Greater latitude should be permitted in discovery of Baker's disposal systems, testing of wastes, plant-specific procedures for such disposal and shipping, and company-wide procedures. The processes which created the wastes do not appear to be relevant to Baker's intent and knowledge in disposing of such wastes.

4. *Discovery concerning Baker's knowledge of landfill and off-site characteristics is appropriate.* Although Baker may not have chosen the sites for waste disposal, Baker may have chosen to ship wastes knowing that the wastes would reach landfills with environmentally sensitive or populated surroundings. For example, information known to Baker and tending to show that a disposal site was inappropriate is discoverable because an inference of actual knowledge of imminent harm may be implied. Similarly, Baker's knowledge concerning the effects of disposal of the substances involved in this case is relevant and discoverable.

5. *Discovery of identities of Baker's employees and former employees with knowledge of the above relevant items is appropriate if confined to managerial and supervisory persons.* It would be impossible for Baker to sift through its personnel records to identify each person who may know something about a relevant area of inquiry, and producing lists of many hundreds of such names would be of no use to Aetna, in any event.

*Timetable*

Within fifteen (15) days of the entry of this Opinion and Order, counsel shall endeavor to apply these guidelines to the specific interrogatories in dispute, modified as appropriate, to determine the scope of those which must be answered. Within sixty (60) additional days, plaintiff shall serve responsive answers to each such interrogatory or modified interrogatory. If counsel disagree regarding the application of these guidelines to a specific interrogatory, such dispute should be brought to my attention by letter and response letter, to be resolved informally if possible; the pendency of such a dispute will not inter-

rupt the 60–day period for responsive answers, above.

The foregoing is SO ORDERED.