CPC INTERNATIONAL, INC., Plaintiff,

v.

NORTHBROOK EXCESS & SURPLUS INSURANCE COMPANY, Defendant.

Civ. A. No. 89–211 L.

United States District Court, D. Rhode Island.

June 21, 1990.

Mark O. Denehy, Adler Pollock & Shee-han, Providence, R.I., and David L. Harris and Stephen H. Sholler, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, N.J., for plaintiff.

Kenneth Borden, Higgins Cavanagh & Cooney, Providence, R.I., Stephen Miller, Clark Ladner Fortenbaugh & Young, Philadelphia, Pa., and Brian Frankl and Charles Philbrick, Dowd & Dowd, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is before the Court on plaintiff's motion for a declaration of choice of law. Plaintiff, CPC International, Inc. (CPC), contends that New Jersey law should govern this insurance contract dispute involving environmental contamination in Rhode Island. Defendant, Northbrook Excess & Surplus Insurance Co. (Northbrook), opposes plaintiff's motion, contending that, because the chemical pollution contaminated Rhode Island lands and waters, this Court should apply Rhode Island law. Defendant argues, in the alternative, that the Court should apply Illinois law as the place of contract negotiation and issuance.

## BACKGROUND

CPC manufactures food, chemical, and feed products on a world-wide scale. Divisions of CPC exist in Europe, Latin America, and Asia, in addition to the United States (the North American division). It operates manufacturing plants in seven different states as well as in numerous countries in the various continents mentioned. It is incorporated in Delaware but maintains its principal headquarters in Englewood Cliffs, New Jersey.

Beginning in 1977, CPC obtained excess insurance from Northbrook under an Umbrella Liability policy. This policy was only one of fourteen excess insurance policies held by CPC. Each year, until 1982, the parties renewed the policy. In May of 1979, Johnson & Higgins, a retail insurance broker located in New York, commenced the renewal procedures by contacting CPC and requesting updated information regarding sales and insurance claims. Upon receipt of the requested information, Johnson & Higgins sent the underwriting data to AVRECO, Inc. (Avreco), a wholesale broker located in Illinois. Avreco then mailed the information to Northbrook. Northbrook returned a telex to Avreco which indicated that Northbrook would limit liability to 25 million dollars if CPC paid a premium of $420,000.00. The telex stated "firm quote, valid 60 days." Avreco sent Johnson & Higgins the "offer on behalf of Northbrook." Johnson & Higgins mailed CPC a letter which compared Northbrook's 1979 offer with the policy for the previous year. The letter asked that CPC give Johnson & Higgins instructions to bind. On June 13, 1979, Avreco telexed Northbrook asking "please bind 25 MLN." That same day Avreco telexed Johnson & Higgins stating "binding on behalf of Northbrook." Johnson & Higgins indicated by telex on June 19, 1979, that CPC had accepted Northbrook's proposal. That same day Northbrook telexed Avreco regarding CPC stating "confirm bound from 7/1/79 to 7/1/80 ... Prem due by 9/24/79." The policy declarations and endorsements were countersigned on or about June 27, 1979, by an authorized representative of Northbrook in Illinois.

The policy insured "CPC International, Inc. and any and all subsidiaries and other business entities both domestic and international, now or hereinafter owned or financially controlled by CPC International, Inc." Under the policy Northbrook agreed to pay all costs arising from property damage occurring anywhere in the world which CPC or any of CPC's subsidiaries became obligated to pay by reason of law or contract. The policy, however, excluded from coverage any

Personal Injury or Property Damage arising out of the discharge, dispersal,

release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Northbrook's policy abstract listed New Jersey as the location of the risk.

In 1979, CPC owned Peterson Puritan, an aerosol can manufacturer, as a subsidiary. Peterson Puritan was incorporated in Delaware but owned and operated a manufacturing plant near the banks of the Blackstone River in Cumberland, Rhode Island. In 1979, volatile chemicals were detected during random well sampling in three wells located near the Cumberland plant. The wells supplied drinking water to neighboring communities. After unsuccessful attempts to flush the contaminants, the wells were closed. An environmental study, ordered by the United States Environmental Protection Agency (EPA), identified Peterson Puritan as the most probable source of the contamination. The study found that Peterson Puritan was the only industrial facility proximately located which used the hazardous chemicals detected in the wells. In 1981, the EPA sent Peterson Puritan a letter requesting information regarding chemical storage and use at the Cumberland plant. The Town of Lincoln and the Board of Water Commissioners of the Town of Lincoln filed suit against Peterson Puritan in October of 1982, seeking damages for the contaminated water supply. The parties settled the claim in 1984 with Peterson Puritan denying fault but agreeing to pay the sum of $780,000.00. Peterson Puritan also agreed to install a recovery well and other engineering controls to prevent further contamination.

CPC gave its primary insurer, Northwestern National Insurance Company (Northwestern), and Northbrook notice of the claims against Peterson Puritan. Northwestern agreed to defend and indemnify Peterson Puritan and paid CPC $1,000,000.00, the extent of the policy limits. CPC sought recovery of its costs in excess of $1,000,000.00 from Northbrook. Northbrook, however, refused to acknowledge a duty to indemnify. CPC initially filed this action against Northbrook in the United States District Court for the District of New Jersey. CPC seeks a declaratory judgment that Northbrook has a duty to indemnify. Plaintiff also seeks damages. Northbrook has affirmatively defended on the ground that the pollution exclusion clause bars plaintiff from recovery.

Upon motion of defendant, this case was transferred to this Court. Plaintiff has now moved for a determination of the appropriate choice of law to apply to the substantive issues of this case. At oral argument, noting that this choice of law decision required a clear understanding of the facts, this Court took this matter under advisement and ordered the parties to submit statements of disputed and undisputed facts. Having reviewed the records presented to this Court by each party, the issue is now in order for decision.

## DISCUSSION

Absent a true conflict between the laws of the interested states, this Court would apply the law of New Jersey. *See International Adm'rs Inc. v. Life Ins. Co. of North America*, 753 F.2d 1373, 1376 n. 4 (7th Cir.1985). Four different states have possible interests in the resolution of this dispute: New Jersey, CPC's principal place of business; New York, the location of Johnson & Higgins, the retail broker who helped negotiate the insurance policy; Rhode Island, the place of the environmental pollution and; Illinois, Northbrook's and Avreco's principal places of business. At the outset, this Court notes that the locations of the brokers present mere distractions because the brokers acted only as intermediaries between CPC and Northbrook. *See Carey Canada, Inc. v. Aetna Casualty & Sur. Co.*, No 84–3113, slip op. at 9 (D.D.C. March 31, 1988). The Court, therefore, need only address whether or not a conflict exists between New Jersey, Illinois, and Rhode Island law.

Although the law of Illinois and New Jersey appears to be the same on the issues involved here, the absence of any substantial law in Rhode Island on the issue of environmental contamination insurance creates a potential conflict. *See id.* at 6. Both Illinois and New Jersey liberally protect their insureds by providing that any ambiguities in insurance policies must be resolved in favor of the insured. *Compare United States Fidelity and Guar. Co. v. Specialty Coatings Co.,* 180 Ill.App.3d 378, 129 Ill.Dec. 306, 310, 535 N.E.2d 1071, 1075 (1989) *with Kopp v. Newark Ins. Co.,* 204 N.J.Super. 415, 499 A.2d 235, 237 (1985). Illinois and New Jersey, likewise, interpret the "sudden and accidental" provision of the pollution exclusion clause (the clause at issue in this case) by considering the intent, expectation, and foresight of the insured. *Compare United States Fidelity, supra,* 129 Ill.Dec. at 312, 535 N.E.2d at 1077 *and Reliance Ins. Co. of Illinois v. Martin,* 126 Ill.App.3d 94, 81 Ill.Dec. 587, 589–90, 467 N.E.2d 287, 289–90 (1984) *with CPS Chem. Co. v. Continental Ins. Co.,* 199 N.J.Super. 558, 489 A.2d 1265, 1268, 1270 (1984), *rev'd on other grounds,* 203 N.J.Super. 15, 495 A.2d 886 (1985) *and Jackson Township Mun. Utilities Auth. v. Hartford Accident and Indem. Co.,* 186 N.J.Super. 156, 451 A.2d 990, 994 (1982).

Although one appeals court in Illinois departs from the consensus and interprets "sudden" as temporal and instantaneous, that particular case involved active dumping of toxic chemicals on the insured's property. *International Minerals & Chem. Corp. v. Liberty Mut. Ins. Co.,* 168 Ill.App.3d 361, 119 Ill.Dec. 96, 100–01, 106–07, 522 N.E.2d 758, 762–63, 768–69 (1988). A subsequent court differentiated its case from *International Minerals* and applied the intentional or expected test to the "sudden and accidental" phrase. *United States Fidelity, supra,* 129 Ill.Dec. at 312, 535 N.E.2d at 1077.

The facts here more closely resemble *United States Fidelity* and *Reliance* which interpreted sudden and accidental by considering the intent to cause the harm rather than the time frame in which the harm occurred. The case at bar does not involve

allegations of actual dumping of hazardous chemicals on land. The allegations against Peterson Puritan were that contamination arose from leaks in its chemical storage tanks. As between Illinois and New Jersey it would appear that no conflict in applicable law exists. Since the absence of Rhode Island law on the subject creates a potential conflict, this Court must still determine which states' law should apply.

■■■ This Court must apply the law of the state which would have been applied had the change of venue not occurred. *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 821, 11 L.Ed.2d 945 (1964). The law of New Jersey is that a New Jersey court must utilize the law of the state where the contract was made unless the substantial interests of another, different state override the interests of the state of contracting. *State Farm Mut. Auto. Ins. Co. v. Estate of Simmons,* 84 N.J. 28, 417 A.2d 488, 493 (1980). *State Farm,* however, emphasized that the law of the place of the contract generally "comport[s] with the reasonable expectations of the parties concerning the principal situs of the insured risk ... and furnish[es] needed certainty and consistency in the selection of the applicable law." *See id.* 417 A.2d at 492. Therefore, under New Jersey law, the place of the contract is not dispositive or controlling when other interests intervene. *Id.* 417 A.2d at 493.

■■■ Unless the contacts with Rhode Island significantly outweigh the contacts with the other states, Rhode Island law will not apply. This case involves Rhode Island only because the contamination arose here. Although some New Jersey courts have applied the law of the state where the pollution occurred in conflict cases, those courts have done so only when the pollution occurred in New Jersey itself. *See Equitable Life Assurance Soc'y of the United States v. Houston Gen. Ins. Co.,* No. 88–3845, slip op. at 18–19 (D.N.J. March 28, 1990); *Witco Corp. v. Travelers Indemnity Co.,* No. 86–2997, slip op. at 2–3, 12, 1987 WL 65060 (D.N.J. May 1, 1987). Using the place of pollution ap-

**714**

proach will prove impractical in any case where the insurance policy in question provides for national or world-wide coverage. In *Westinghouse Elec. Corp. v. Liberty Mut. Ins. Co.*, 233 N.J.Super. 463, 559 A.2d 435 (1989), the court faced a scenario which involved an insurance policy which covered the parent company nationwide. *Id.* 559 A.2d at 436.

The court stated

In our view, the notion that the insured's rights under a single policy vary from state to state depending on the state in which the claim invoking the coverage arose contradicts not only the reasonable expectation of the parties but also the common understanding of the commercial community. It also seems to us anomalous, in conflict-of-law terms, to suggest that more than one body of law will apply to a single contract.

*Id.* 559 A.2d at 442. The *Westinghouse* court also noted

While not intending to deprecate the legitimacy of local concern for and control over its own environmental contamination, we nevertheless cannot conceive that the operative contract language in a single set of insurance policies issued by a group of insurers for the purpose of providing integrated comprehensive coverage for nationwide risks could mean something different in every state of the union.

*Id.* 559 A.2d at 441–42. This Court concurs with those sentiments and concludes that Rhode Island law should not apply here.

Having disposed of Rhode Island law as a possible contender in this conflict situation, the Court once again notes that no apparent disparity exists between the law of Illinois and New Jersey in this area. Absent a conflict, New Jersey law clearly would apply. Even if a conflict did exist, this Court opines that New Jersey law should be applied to this dispute.

CPC and Northbrook adamantly argue that their respective domiciles represent the place of contract and should provide the applicable law. New Jersey courts, however, have only applied a strict "place of contract" rule when an overwhelming majority of the activities which led to the contract's execution occurred within that jurisdiction. *See Armotek Indus., Inc. v. Employers Ins. of Wausau*, No. 88–3110, slip op. at 7–9, 1989 WL 21771 (D.N.J. Nov. 6, 1989); *Nelson v. Insurance Co. of North America*, 264 F.Supp. 501, 503 (D.N.J. 1967); *State Farm, supra*, 417 A.2d at 493.

In situations where the contract touched two or more states, New Jersey courts have found that other interests override the "place of contract" rule. For example, in *Carey Canada*, the court applied the law of the parent company's domicile. *See Carey Canada, supra*, slip op. at 8–9. The court so decided because the excess insurers negotiated in and executed excess insurance policies from Illinois, while the primary insurers negotiated and operated from Florida. *Id.* at 9. As discussed earlier, many New Jersey courts, believing that the state where the environmental pollution arose had the greatest interest in the outcome of the dispute, have applied the law of the state where the environmental tort occurred. *See, e.g., Equitable Life Assurance, supra*, slip op. at 19–20; *Crown Cork & Seal Co. v. Aetna Casualty & Sur. Co.*, No. L–007456–88 (N.J. Law Div. August 8, 1989); *Witco Corp., supra*, slip op. at 13–15.

The present case does not fit neatly into any of the above categories. When applied to the case at bar, all of the above cited cases and rules present problems. No one state here has definitively more substantial interests than the others. This is not a case where the insurer and insured operated from the same jurisdiction. The insurance application and the negotiations channeled back and forth from New Jersey to New York to Illinois. Although it appears that the last act necessary to effectuate the written contract between CPC and Northbrook was the signature of Northbrook's authorized representative in Illinois, *See Armotek Indus., supra*, slip op. at 7, the parties were nonetheless bound to its terms, prior to that signature, by CPC's acceptance of Northbrook's offer in New Jersey. This Court cannot divine that both the insured and insurer reasonably believed

that Illinois law would govern any and all disputes under this insurance contract merely because the policy was physically signed in Illinois. Rather, common sense suggests that, knowing of the potential for claims in any number of states and even in foreign countries, the parties would consider the insured's principal headquarters as the one jurisdiction which ties all potential parties together. In fact, Northbrook's insurance policy abstract designated New Jersey as the location of the insured risk. Although perhaps not intended by Northbrook to literally designate the place of the risk, it shows that CPC's domicile represented an important nexus.

To apply the law of the state where the insurer signed the policy (generally the insurer's domicile) which insures a conglomerate with projects and businesses all over the country or the world would produce unwanted and unnecessary inconsistencies. *See Carey Canada, supra,* slip op. at 9 (when insurers located across the country, location of insurers home office not important). These companies purchase numerous insurance policies from numerous insurance companies. Under any one claim identical policies issued by different insurers would be subject to vastly different interpretations depending on where the policy happened to be signed or where the insurer maintained its domicile. In fact, CPC indicated that during the period in question, it held insurance with thirteen other excess carriers whose principal places of businesses spanned eight states. For example, if CPC sought relief from different insurers, one in New Jersey and the other in Pennsylvania, a court applying a strict "place of contract" rule could find one liable and one not liable only because New Jersey and Pennsylvania interpret "sudden and accidental" differently. *Cf. Carey Canada, supra,* slip op. at 9. This contradicts the concern for certainty and consistency expressed in *State Farm. State Farm, supra,* 417 A.2d at 492.

In this kind of a case where the parties and their agents have ties to three states and where the environmental contamination giving rise to the dispute arose in a fourth state, it would appear more reasonable to apply the law of the one state which connects all of the parties together. *See Carey Canada, supra* at 9 (should heavily weigh residence of insured when determining choice of law in insurance contracts). Furthermore, the body of law which has arisen from the environmental contamination problem addresses two concerns: 1) rectifying the harm to the public caused by environmental contamination and 2) protecting the interest of the insureds. The contacts with Illinois do not address either of those considerations. New Jersey, on the other hand, has a strong public interest in protecting its resident insureds. Therefore, this Court concludes that a court sitting in New Jersey would interpret this insurance contract with this factual backdrop in accordance with New Jersey law.

## CONCLUSION

For the above stated reasons, plaintiff's motion for a determination that New Jersey law applies to this case is hereby granted.

*It is so Ordered.*