OPINION OF THE COURT
Joseph P. Kuszynski, J.
Plaintiff, the County of Niagara (County) moves pursuant to *815 CPLR 3212 for summary judgment in its declaratory judgment action brought to determine defendant Utica Mutual Insurance Company’s (Utica Mutual) obligation to defend it in the series of actions commonly known as the “Love Canal” litigation.
While the County’s declaratory judgment action seeks determination as to both Utica Mutual’s duty to indemnify as well as to defend, the parties stipulated on oral argument that for purposes of this motion, the issue be limited to the duty to defend. Defendant Utica Mutual cross-moves for summary judgment dismissing the action.
The crux of the motion concerns an exclusion clause contained in the special multiperil liability insurance policy issued by Utica Mutual to the County. It was first included in a policy effective January 1, 1975 through January 1, 1978 and in a later policy covering the period from January 1, 1978 until January 1, 1980.
The clause reads:
"This insurance does not apply * * *
"(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.”
As specified in plaintiff’s complaint and the amended complaint, some 65 individual claimants represented by five different law firms have commenced actions in Niagara County, Supreme Court, during October, and November, 1979 seeking to recover for personal injuries and property damage as well as punitive damages allegedly resulting from the dumping of toxic chemical wastes at the "Love Canal” site in the City of Niagara Falls, New York. These actions were brought against several defendants including the County.
Upon oral argument, counsel for defendant Utica Mutual maintained that every allegation of every complaint is premised on the basic factual statement that the dumping of toxic chemical wastes and their eventual migration into the Love Canal environment caused the claimed injuries and damages. Utica Mutual also maintains that the toxic substances were released and caused injury over a long period of time and *816 cannot therefore be considered to have happened in a “sudden or accidental” manner. It submits that the pollution exclusion in its policy, exempts it from its duty to defend the County in the Love Canal actions.
The County first contends that the language and legislative intent of subdivisions 13 and 14 of section 46 of the Insurance Law, commonly referred to as the “pollution exclusion”, precludes the use of the exclusion clause in insurance policies issued to municipalities, as opposed to “commercial or industrial” enterprises.
Subdivisions 13 and 14 of section 46 of the Insurance Law provide that: “Policies * * * issued to commerical or industrial enterprises providing insurance against the legal liabilities specified in this subdivision shall expressly exclude therefrom liability arising out of pollution or contamination caused by the discharge, dispersal, release or escape of any pollutants, irritants, or contaminants into or upon land, the atmosphere or any water course or body of water unless such discharge, dispersal, release or escape is sudden and accidental.” (Emphasis supplied.)
Plaintiff argues that the above language indicates a legislative intent to limit the use of the exclusion clause to policies issued to commercial and industrial enterprises and therefore bars this court from expanding its use to municipalities even if they are polluters. Plaintiff cites subdivision 1 of section 143 of the Insurance Law, in support of its conclusion: “any contract or policy of insurance * * * delivered * * * in this state in violation of any of the provisions of this chapter shall be valid and binding upon the insurer making or issuing the same, but in all respects in which its provisions are in violation of the requirements or prohibitions of this chapter it shall be enforceable as if it conformed with such requirements or prohibitions.”
Reliance is mainly placed by the County on the interpretation of subdivision 1 of section 143 in Matter of Durant (Motor Vehicle Acc. Ind. Corp.) (20 AD2d 242, 248) wherein the court stated: “But assuming that the endorsement has received [the Superintendent of Insurance’s] express approval, as perhaps we must * * * nevertheless the endorsement cannot be enforced if it runs counter to the legislative intent or if it violates existing law”. The cited Durant decision, however, was modified by the Court of Appeals (15 NY2d 408) so as to approve the endorsement involved.
*817 There is substance in the reasoning of Utica Mutual that nothing in the pollution exclusion demonstrates the intent of the Legislature to exclude the application of the clause to other insureds. A general liability insurance policy, unlike the standard New York State fire insurance policy, is not a creature of statute. Very few provisions of a general liability insurance policy are mandated by statute. It would thus appear that the pollution exclusion legislation approved by the State Legislature in 1970, while mandating its inclusion in the liability policies of commercial and industrial concerns, in no way limits an insurer from writing it into other policies. The bulk of liablity policy terms are subject to the ordinary rules of contract to be agreed upon or rejected by the contracting parties, subject to insurance department approval. (Michigan Millers Mut. Ins. Co. v Christopher, 66 AD2d 148.)
In defendant’s answer to the complaint and amended complaint, portions of the complaints in the actions filed by the Love Canal claimants against the County are set forth, to demonstrate that they fall within the language of the pollution exclusion clause.
It should be underscored that in 4 of the 5 sets of the complaints so brought to this court’s attention by Utica Mutual, no accusation is made, that the County itself actually buried toxic chemicals in the Love Canal site. The "Boniello” complaints only mention that Hooker dumped toxic chemical wastes into the Love Canal which is located in Niagara County. The "Miles” complaints state the County "had actual and/or constructive notice that said chemicals and other toxic substances had been buried and disposed in the Love Canal area” by Hooker from "at least 1942 to 1953”.
The "Bartolomei” complaints again only refer to the fact that between 1930 and 1953, Hooker buried toxic wastes in the Love Canal area located in the City of Niagara Falls. The "Cohen” complaints state "The County of Niagara did negligently and wrongfully acquiesce in and agree to the creation and maintenance of a known and deadly health hazard, to wit, the chemical storage area known as the Love Canal * * * As a direct and approximate of the action and failure to act by the County of Niagara, plaintiff has suffered serious injury”.
Only the "Julian” complaints, on behalf of the Snyder’s et al., broadly state that all "defendants”, a grouping in which the County is included, "did dump and abandon chemical *818 waste products, debris and other substances in the 'Love Canal’ site.”
The language of the Circuit Court in Molton, Allen & Williams v St. Paul Fire & Mar. Ins. Co. (347 So 2d 95, 99 [Ala]) the first court to interpret a pollution exclusion clause, is very illuminating in determining the application of the provision in situations such as before this court: "It is believed that the intent of the 'pollution exclusion’ clause was to eliminate coverage for damages arising out of pollution or contamination by industry-related activities * * * We judicially know that during the last decade, much emphasis has been placed upon protecting the environment. The pollution exclusion was no doubt designed to decrease the risk where an insured was putting * * * toxic chemicals * * * into the environment.” (Emphasis added.)
To hold that a municipality should be deprived of a defense by an insurance company in an action premised on pollution wrongdoing, where, the strongest allegations only state that the industrial chemical waste dumping took place within the municipality, or that the municipality acquiesced to the dumping, or had notice of the dumping, would lead to the conclusion that no municipality could expect a defense, if named in a suit involving industrial pollution of an area within the municipality.
This court cannot perceive how the pollution exclusion can be applied to deprive a public corporation of coverage where it has been at most, accused in a complaint of nonfeasance, as opposed to misfeasance of the type here alleged. The legislative history of subdivisions 13 and 14 of section 46 of the Insurance Law and other sources indicates that the pollution exclusion was solely meant to deprive active polluters of coverage. (See Memorandum of Governor Rockefeller, filed with Assembly Bill No. 6952 and Senate Bill No. 7042, NY Legis Ann, 1971, p 353; Memorandum of Roger W. Tompkins, Dep. Superintendent of New York State Insurance Department, to Governor, June 15, 1971; Memorandum of Commissioner Diamond, New York State Dept. of Environmental Conservation, May 28, 1971; Memorandum of Assemblyman Glenn H. Harris regarding Assembly Bill No. 6952, 1971; Molton, Allen & Williams v St. Paul Fire & Mar. Ins. Co., supra; Pepper Inds. v Home Ins. Co., 67 Cal App 3d 1012.)
In any event, where an insurance policy is ambiguous or subject to more than one reasonable construction, it will be *819 construed most favorably to the insured and most strictly against the insurer. (Matter of Vanguard Ins. Co. [Polchlopek], 18 NY2d 376; Insurance Co. of North Amer. v Godwin, 46 AD2d 154.) This rule is particularly applicable when ambiguities are found within an exclusionary clause. (Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co., 34 NY2d 356; Sacks v Hartford Ins. Co., 68 AD2d 48; J.G.A. Constr. Corp. v Charter Oak Fire Ins. Co., 66 AD2d 315.)
Furthermore, although defendant Utica Mutual does not list the complaints made by the Love Canal litigants in full, a perusal of some reveals the presence of allegations concerning the County’s liability other than its tenuous, at best, link to the actual dumping of the industrial chemical wastes. The existence of the additional allegations lends a further basis for Utica Mutual to provide the defense to the County in the pending litigations. "However, if various grounds are alleged, some within and some without the coverage of the policy, the insurer is bound to undertake the defense of the action on behalf of its assured * * * As observed in Prashker v United States Guar. Co. (1 NY2d 584) * * * 'The circumstances that some grounds are alleged in the complaints in the negligence actions which would involve the insurance company in liability, is enough to call upon it to defend these actions.’ ” (American Home Assur. Co. v Port Auth. of N. Y. & N. J., 66 AD2d 269, 277.)
These holdings necessitate that this court order Utica Mutual Insurance Company to defend all actions brought against the County of Niagara, including those brought in the "Julian” complaints where the allegations charge the County of Niagara with an actual dumping of chemicals. The duty to defend is a contract right, consideration for which is the premium paid. The right to a defense exists even if debatable theories are alleged against an insured, some of which may be within and others without the insured risk. (Intentional Paper Co. v Continental Cas. Co., 35 NY2d 322; American Home Assur. Co. v Port Auth. of N. Y. & N. J., supra.)
Among other allegations contained in the "Julian” complaints are charges that the County had failed to warn the general public of a dangerous condition, failed to perceive risks to human health, and failed to remedy, rectify and cure a dangerous condition or remove chemicals after they had been deposited there by Hooker. As these allegations involve failures beyond those "arising out of the discharge, dispersal *820 release or escape of smoke, vapor, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course of body of water”, a further ground thereby exists upon which to find the existence of a duty to defend. Similar allegations are found in all five sets of complaints filed in the Love Canal litigation to which Utica Mutual had made reference to.
"The obligation of an insurance company to defend its named insured is separate and distinct from its obligation to pay. Only when it can be concluded as a matter of law that there is no basis upon which the insurance company might be obligated to indemnify the named insured under any provisions of the policy is the insurance company relieved from its duty to defend”. Penn Aluminum v Aetna Cas. & Sur. Co. (61 AD2d 1119.) "So long as the claims, even though predicated on debatable or even untenable theory, may rationally be said to fall within policy coverage, whatever may later prove to be the limits of the insurer’s responsibility to pay, there is no doubt that it is obligated to defend”. (Schwamb v Fireman’s Ins. Co. of Newark, N. J., 41 NY2d 947, 949.) " 'The distinction between liability and coverage must be kept in mind. So far as concerns the obligation of the insurer to defend the question is not whether the injured party can maintain a cause of action against the insured, but whether he can state facts which bring the injury within the coverage. If he states such facts the policy requires the insurer to defend irrespective of the insured’s ultimate liability.’ ” (Goldberg v Lumber Mut. Cas. Ins. Co. of N. Y., 297 NY 148, 154.)
Still another reason is indicated in the reasoning of the court in Farm Family Mut. Ins. Co. v Bagley (64 AD2d 1014) in support of the proposition that Utica Mutual provide the defense which is sought. In that matter the insurer had refused to defend Mr. Bagley, a crop duster in an action brought against him to recover for damages to grape plants in a field adjoining the farm he was supposed to have sprayed with chemicals.
"In construing whether or not a certain result is accidental, it is customary to view the casualty from the perspective of the insured to determine whether it was ' "unexpected, unusual and unforeseen” ’ (Miller v Continental Ins. Co., 40 NY2d 675, 677).” (Farm Family Mut. Ins. Co. v Bagley, supra, p 1014.)
*821 There the court concluded, when viewed "in a light most favorable to the insured”, the "dispersal” of spray may have been "sudden, unexpected, unusual and unforeseen * * * Clearly, defendants did not intend to disperse the spray so as to cause damage to [the adjoining land owner’s] grapes.” (Farm Family Mut Ins. Co. v Bagley, supra, p 1014.)
Admittedly some of the Love Canal complaints contain references that the County knew of, acquiesced in the dumping and failed to enforce pollution laws and regulations then in effect. Absent however, are any allegations in four of the complaints that the County was directly involved in the dumping of chemicals. The County’s role in the Love Canal tragedy must be viewed "in a light most favorable to the insured.” As such, on basis of the four sets of complaints, it may be found that the pollution — from the County’s viewpoint at least, was "sudden and accidental”, which did not occur until the discovery of the deleterious effects of the buried industrial toxic chemicals.
If there is any ambiguity in the language of the policy or if it is susceptible to different interpretations, the court must accept the interpretation most favorable to the insured and the court cannot engage in efforts to determine which interpretation might be most reasonable. (County of Schenectady v Travelers Ins. Co., 48 AD2d 299.) A construction favorable to the insurer will only be sustained where it is the sole construction which can fairly be placed upon the words employed. (Cantanucci v Reliance Ins. Co., 43 AD2d 622.) Finally, the courts have recognized that the obligation to defend is broader than the duty to pay. (Goldberg v Lumber Mut. Cas. Ins. Co. of N. Y., 297 NY 148, supra.)
As part of its motion to compel Utica Mutual to provide a defense, the County requests that Utica Mutual be compelled to reimburse the County for all expenses of defense previously incurred, including the costs of this motion. The County is entitled to a reimbursement of the defense costs heretofore incurred. However, it is well settled that an insured may not be awarded attorney fees or other expenses in the prosecution of a declaratory judgment against the insurer to determine coverage. (Mighty Midgets v Centennial Ins. Co., 47 NY2d 12; Grimsey v Lawyers Tit. Ins. Corp., 31 NY2d 953.)
Submit order granting summary judgment in favor of the movant, the County of Niagara, on the issue of its entitlement of a defense in the Love Canal litigation from its liability *822 insurer, severing pursuant to CPLR 3212 (subd [e]) the issue of indemnity, and denying defendant’s Utica Mutual Insurance Company cross motion to dismiss the complaint.