[No. 10185-4-I. Division One. May 23, 1983.]

UNITED PACIFIC INSURANCE COMPANY, *Appellant*, v. VAN'S WESTLAKE UNION, INC., ET AL, *Defendants*, UNION OIL COMPANY OF CALIFORNIA, *Respondent*.

*James Beecher* and *K. C. Webster*, for appellant.

*Lawrence E. Hard,* for respondent.

ANDERSEN, C.J.—

### FACTS OF CASE

This is a declaratory judgment brought by United Pacific Insurance Company against the lessee and owner of the Union 76 service station located at the corner of Westlake Avenue North and Mercer Street in downtown Seattle. The purpose of this action is to resolve an insurance coverage dispute which arose following a massive gasoline leak which occurred at the station.

On cross motions for summary judgment, the trial court determined that the comprehensive liability insurance policy written by the insurer (United Pacific) on the service station did cover numerous claims and suits brought against the insured[1] by third parties. These claims and suits arose out of an approximate 80,000–gallon gasoline leak which occurred on the service station premises. The trial court also ruled that the insurer owed the insured a duty to handle and defend all such claims and actions. The insurer appeals. We affirm.

Sometime about the first of June 1980, it was determined that large quantities of gasoline had leaked out of a small

---

[1]For convenience, we use the singular "insured" herein.

hole in an underground gasoline pipe at the service station. The leakage had occurred over a period of some months. When notified of this, municipal authorities promptly closed the station and cordoned it off along with an adjacent several square block area while the gasoline was pumped out of the ground.

At the time, the station was operated by Van's Westlake Union, Inc. under a lease from Union Oil Company of California, as it had been for some years previously. Also, at the time and for some years previously, the lessee's premises and operations were insured under a comprehensive liability insurance policy written by United Pacific.

The area was closed to traffic for several weeks. A number of businesses in the area made claims for loss of profits and similar damages resulting from the closure. The claims and suits were tendered by the insured to the insurer which declined to either defend or pay. The insurer then brought this declaratory judgment action seeking a judicial determination of what obligations it had, if any, under the policy.

The insurer's appeal presents one issue.

## ISSUE

Does the pollution exclusion clause in the comprehensive liability insurance policy exclude coverage for loss of use of property of third persons caused by gasoline leaking out of the insured's underground gasoline line over a period of several months, and which leak resulted in an extended closure of the area where the third persons' businesses are located?

## DECISION

CONCLUSION. In construing the pollution exclusion clause, we conclude that it was intended to deprive active polluters from coverage, and not to apply where, as here, the damage caused was neither expected nor intended. Claims involving loss of use by third persons of tangible property not injured or destroyed, arising from this occurrence, was property damage covered by the liability insurance policy.

■ The interpretation of an insurance contract is a question of law for the courts to determine. *Pacific Indem. Co. v. Bloedel Timberlands Dev., Inc.,* 28 Wn. App. 466, 468, 624 P.2d 734 (1981).

The liability insurance clause in the policy before us provides:

LIABILITY—Coverage A—Bodily Injury and Coverage B—Property Damage

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of Bodily Injury or *Property Damage* to which this insurance applies, caused by an *Occurrence.* The company shall have the right and duty to defend any Suit against the Insured seeking damages on account of such Bodily Injury or Property Damage, even if any of the allegations of the Suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any Suit after the applicable limit of the company's liability has been exhausted by the payment of judgments or settlements.

(Italics ours.)

"Property damage" is defined:

"Property Damage" means (a) physical injury to or destruction of tangible property, including the loss of use thereof at any time resulting therefrom, or (b) loss of use of tangible property which has not been physically injured or destroyed, provided such loss of use is caused by an occurrence during the policy period.

"Occurrence" is defined:

"Occurrence" means an accident, an event or a continuous or repeated exposure to conditions which results, during the policy period, in Bodily Injury or Property Damage neither expected nor intended by the Insured.

The policy clause which excludes pollution from coverage reads:

THE INSURANCE AFFORDED BY THIS POLICY DOES NOT APPLY:

. . .

(b) to Bodily Injury or Property Damage

(1) caused intentionally by or at the direction of the Insured, or (2) arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this part (2) does not apply if such discharge, dispersal, release or escape is sudden and accidental.

The courts which have considered the relatively new pollution exclusion clause have almost unanimously held it to be ambiguous. *See Molton, Allen & Williams, Inc. v. St. Paul Fire & Marine Ins. Co.,* 347 So. 2d 95, 99 (Ala. 1977); *Niagara Cy. v. Utica Mut. Ins. Co.,* 103 Misc. 2d 814, 427 N.Y.S.2d 171 (N.Y. Sup. Ct. 1980), *aff'd,* 80 A.D.2d 415, 439 N.Y.S.2d 538 (1981); *A–1 Sandblasting & Steamcleaning Co. v. Baiden,* 53 Or. App. 890, 632 P.2d 1377, 1379 (1981); and *Jackson Township Mun. Utils. Auth. v. Hartford Accident & Indem. Co.,* 186 N.J. Super. 156, 451 A.2d 990 (1982).

In this state, an insurance policy is deemed ambiguous "when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Morgan v. Prudential Ins. Co. of Am.,* 86 Wn.2d 432, 435, 545 P.2d 1193 (1976).

In the case before us, the liability insurance policy on the one hand covers an "occurrence", which by policy definition includes conditions which are continuing in nature (as the insured argues), while on the other hand the pollution exclusion clause in the policy excludes from coverage damages arising out of the escape of liquids, gases and other substances unless the escape is sudden (as the insurer argues is the situation presented). Both cannot be true yet both positions are reasonable, hence, the policy is ambiguous and requires judicial interpretation. It then follows that ambiguities in the policy are to be construed against the insurer which wrote the policy and in favor of the insured— particularly where an exclusion is involved as it is here. *Witherspoon v. St. Paul Fire & Marine Ins. Co.,* 86 Wn.2d 641, 650, 548 P.2d 302 (1976).

■ The form of the insurance policy provisions in question is relatively new. They were substantially changed in an industry–wide revision of standard general liability insurance provisions in 1966, and again in 1973. 3 R. Long, *Liability Insurance* App–30, App–53 (1976). In interpreting such provisions, it is helpful to look at what the insurance underwriters intended when they changed these clauses. *See Weber v. Biddle,* 4 Wn. App. 519, 528, 483 P.2d 155 (1971); *Allegheny Airlines, Inc. v. Forth Corp.,* 663 F.2d 751, 755 (7th Cir. 1981).

First, we turn to the revised definition of "property damage". The new definition of that term was "intended to make clear that 'property damage' also means loss of use of tangible property which has not been physically damaged or destroyed provided it is caused by an occurrence during the policy period." R. Long, at App–54. The third party claims for damages resulting from the approximate 6–week closure of the nearby businesses while the spilled gasoline was being pumped out of the ground were thus losses contemplated by the definition of "property damage" in the policy.

"The term 'occurrence' is generally viewed as providing greater coverage than under the previously used measure 'accident.'" 11 G. Couch, *Insurance* § 44:285, at 437 (2d ed. 1982). One of the principal 1973 revisions in language contained in this policy involved clarification of the word "occurrence" which made it mean an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured. R. Long, at App–53. As noted by this commentator, such "definition should make it clear that occurrence embraces not only the usual accident, but also exposure to conditions which may continue for an unmeasured period of time." R. Long, at App–53. The leak in the insured's underground gasoline line, which went undetected for a number of months (and during all of which time the policy with this insurer·was in effect), was thus an "occurrence" within the

contemplation of the policy.

 The pollution exclusion was also added by the 1973 standard revisions. The exclusion "eliminates coverage for damages arising out of pollution or contamination, where such damages appear to be expected or intended on the part of the insured and hence are excluded by definition of 'occurrence.'" R. Long, at App–58.

In *Niagara Cy. v. Utica Mut. Ins. Co., supra,* the court had before it the same pollution exclusion clause as in the policy before us (and which clause was required by statute to be a part of liability insurance policies in that state, New York). The court in *Niagara* concluded that "the pollution exclusion was solely meant to deprive active polluters of coverage." *Niagara,* 103 Misc. 2d at 818, 427 N.Y.S.2d at 174. We agree. In the recent case of *Jackson Township Mun. Utils. Auth. v. Hartford Accident & Indem. Co., supra,* after reviewing the decisions dealing with the pollution exclusion, the court held that "[w]hen viewed in light of the case law cited, the clause can be interpreted as simply a restatement of the definition of 'occurrence'—that is, that the policy will cover claims where the injury was 'neither expected nor intended.'" *Jackson,* 186 N.J. Super. at 164, 451 A.2d at 994. Again we agree.

It is fundamental that insurance contracts should be given a fair, reasonable and sensible construction which fulfills the apparent object of the contract rather than a construction which leads to an absurd conclusion or renders a policy nonsensical or ineffective; and to that end, ambiguity should be resolved so that a doubtful provision in a contract will not unfairly devour the whole policy or relieve the insurer from liability fairly within the spirit of the policy. *McDonald Indus., Inc. v. Rollins Leasing Corp.,* 95 Wn.2d 909, 913, 631 P.2d 947 (1981).

The insured in the case before us was not an active polluter. The gasoline leaking from a hole in the underground line was not expected or intended, nor was the resulting damage. Thus, the pollution exclusion clause did not exclude coverage for the third party claims and suits

against the insured. To hold otherwise would permit the ambiguous pollution exclusion clause to unfairly devour much of the policy and relieve the insurer from liability clearly within the spirit and intendment of the policy. *See McDonald,* at 913.

Since we have concluded that losses such as those which occurred in this case were intended by the underwriters who devised the policy language to be covered by the policy, and were not intended to be excluded, we need not go further and opine as to what "would be understood by the ordinary man buying insurance", see *Witherspoon v. St. Paul Fire & Marine Ins. Co., supra* at 650, or expound on what is a "sudden" escape of liquids and gases within the purview of the pollution exclusion, see *Allstate Ins. Co. v. Klock Oil Co.,* 73 A.D.2d 486, 426 N.Y.S.2d 603, 605 (1980).

The trial court correctly determined that the losses in question were covered by the comprehensive liability insurance policy written by the insurer and that the insurer was required to defend. Summary judgment to that effect was properly entered by the trial court. CR 56.

Affirmed.

CALLOW and RINGOLD, JJ., concur.

Reconsideration denied August 23, 1983.

Review denied by Supreme Court October 21, 1983.