783 F.Supp. 1199 (1991)
AETNA CASUALTY AND SURETY COMPANY, Plaintiff,
v.
GENERAL DYNAMICS CORPORATION, Defendant.
No. 88-2220C (A).
United States District Court, E.D. Missouri, E.D.
January 23, 1991.
*1200 *1201 Miller, Cassidy, Larroca & Lewin, James E. Rocap, III, Niki Kuckes, Washington, D.C., Kohn, Shands, Elbert, Gianoulakis & Giljum, Robert T. Haar, St. Louis, Mo., for plaintiff.
Coburn, Croft & Putzell, Thomas E. Douglass, Timothy F. Noelker, John G. Simon, Michael B. Minton, St. Louis, Mo., Spencer, Fane, Britt & Brownw, James T. Price, Terry Schackmann, Kansas City, Mo., for defendant.

MEMORANDUM AND ORDER
HARPER, District Judge.
This matter is before the Court upon the motion of plaintiff, Aetna Casualty and Surety Company, for entry of summary judgment as to all remaining claims; and upon the motion of defendant, General Dynamics Corporation, for entry of summary judgment as to its Second Counterclaim.

FACTUAL BACKGROUND
The factual background of this case may be summarized as follows:[1] Plaintiff, Aetna Casualty and Surety Company, brought the underlying declaratory judgment action seeking to have the Court declare that it is not liable to defend, pay and/or indemnify defendant, General Dynamics Corporation, under several Commercial General Liability (CGL) insurance policies issued to defendant with respect to liability arising by way of federal statute, state statute and state common law for hazardous waste clean-up and damages to natural resources. Plaintiff contends that the policies do not cover certain claims, demands, notices and suits asserted or to be asserted in the future based on the hazardous waste clean-up and damages to natural resources resulting from the hazardous waste contamination of sixteen sites located in eight states.[2] Plaintiff *1202 subsequently brought a motion for partial summary judgment arguing that it has no duty to defend or indemnify defendant with respect to claims for costs of the "clean-up" of certain hazardous waste sites under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq. Prior to ruling on the motion, this Court determined that plaintiff failed to present a "controversy" within the Article III formulation for the Cordage Park site, the Sylvester site, the Maxey Flats site, the Tucson Airport site, the Quincy Shipyard site and the Norwich Iron and Metal site, the Landfills sites (duty to indemnify only) and the Gary, Indiana site (duty to defend only). This Court held that partial summary judgment was proper with respect to plaintiff's obligation to defend and/or indemnify defendant concerning response costs under CERCLA actions involving the Kansas City site and the Review Avenue site respectively involved in the litigation styled United States v. Conservation Chemical Company, et al., No. 82-0983-CV-W-5 (W.D.Mo.) and The City of New York v. United Technologies Corp., No. 85 Civ. 4665 (EW). Aetna Casualty and Surety Company v. General Dynamics Corp., No. 88-2220C (A) (E.D.Mo. Dec. 12, 1989) (Order granting partial summary judgment). In addition, the Court entered summary judgment for plaintiff concerning its duty to indemnify defendant for CERCLA settlement costs covering the Gary, Indiana site, the Cannons Engineering sites[3] basing such decision on the Eighth Circuit's recent ruling in Continental Ins. Co. v. Northeastern Pharmaceutical & Chemical Co., 842 F.2d 977 (8th Cir.), cert. denied, 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988) (hereinafter referred to as NEPCCO). This Court also denied plaintiff's motion regarding its duty to defend defendant in the pending action entitled The City of New York v. Exxon Corp., No. 85 Civ. 1939 (EW), that involved alleged unlawful hazardous waste disposal in the New York City Landfills sites ("Landfills Sites"). Plaintiff later moved for summary judgment on defendant's First Counterclaim which alternatively sought recovery on the basis that plaintiff was obligated to pay defendant's settlement costs involving the Conservation Chemical litigation pursuant to the parties oral settlement agreement allegedly entered into in 1986, and alternatively, on plaintiff's duty to defend defendant under the CGL policy and Interim Defense Agreement entered into by plaintiff and Insurance Company of North America ("INA", a co-insurer of defendant). By our August 24, 1990 Order, plaintiff's motion for summary judgment on defendant's First Counterclaim was granted.

CURRENT MOTIONS FOR SUMMARY JUDGMENT
The parties currently move for summary judgment on all remaining issues: whether plaintiff is obligated to pay expenses incurred by defendant in defending and paying as settlement amounts for state statutory clean-up costs for the New York City Landfills sites, Review Avenue site and the Cannons sites; whether plaintiff is obligated to pay expenses incurred by defendant in defending the action involving the Landfills Sites concerning the CERCLA counts; whether plaintiff is obligated to pay expenses incurred by defendant in defending and paying settlement payments pertaining to state common law actions for the Landfills Sites, the Review Avenue sites and the Cannons Engineering Corp. sites ("Cannons sites"); and, whether plaintiff is obligated to pay expenses incurred by defendant in defending and paying settlement amounts pertaining to state and CERCLA actions for damages to natural resources for the Landfills Sites, the Review Avenue sites and the Cannons sites.

*1203 A. SUMMARY JUDGMENT STANDARDS
Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if it can, "show that there is no genuine issue of material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Poller v. Columbia Broadcasting Sys., Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).
The parties have stipulated that there exists no genuine issue of material fact remaining in the instant action. The parties submitted to the Court documentary evidence and a joint stipulation of fact concerning the actions involving the Landfills Sites and the Review Avenue, as well as the Cannons sites. It was only during the briefing of the current cross motions for summary judgment that the Court was informed that the Landfills Sites litigation was settled. In light of such settlement, the Court may now consider the merits of the parties claims that concern the Landfills Sites litigation.[4]

B. LANDFILLS SITES  CERCLA CLAIMS
As a preliminary matter and in light of our past Orders granting partial summary judgment in favor of plaintiff and holding that NEPCCO controls all decisions with respect to claims for indemnity for response costs incurred and defense costs concerning claims premised on CERCLA, (Memorandums and Orders December 12, 1989 and April 9, 1990), this Court will grant plaintiff's motion for summary judgment concerning its obligation to indemnify and/or pay defendant's defense costs incurred in defense of the Landfills Sites actions concerning CERCLA counts seeking payment of response costs. NEPCCO, 842 F.2d 977 (8th Cir.1988).

C. REMAINING SITES  STATE COMMON LAW AND STATUTORY CLAIMS
Turning to the remaining issues: plaintiff's obligation to pay defense costs and settlement expenses for state statutory and common law claims premised on nuisance, abatement of nuisance, negligence, ultrahazardous activity and statutory nuisance concerning the Landfills Sites, the Review Avenue site, and the Cannons sites.[5] In the Landfills Sites action, The City of New York v. Exxon Corp., No. 85 Civ.1939 (EW), defendant was sued by the defendants/third party plaintiffs named in the action by The City of New York ("City"). The third party plaintiffs sought damages premised upon the following relevant causes of action: damages resulting from the continuation of a public nuisance (Count II); damages resulting from the continuation of a statutory nuisance (Count III); damages resulting from activities labeled as ultrahazardous or abnormally dangerous (Count IV); that defendant is obligated to pay damages arising from a finding in the original action that third party plaintiff owed a duty to abate the public nuisance and that the City is entitled to restitution from the third party plaintiff (Count V); damages arising from third party defendant's breach of their duty to exercise reasonable care in generating, transporting and disposing of wastes (Count VI). In the Review Avenue action, The City of New York v. United Technologies Corp., No. 85 Civ. 4665 (EW), defendant was sued by the defendants/third party plaintiffs named in the action by the City. The third party plaintiffs sought damages premised upon the following relevant causes of action: damages resulting from the creation and continuation of a public nuisance (Count IV); damages resulting from the creation a statutory nuisance, § 564.15.0 N.Y.Admin.Code (Count VI); damages resulting from creating an ultrahazardous or abnormally dangerous condition (Count VIII); damages arising from abatement of a public nuisance if the court, in the original action, finds that the third party plaintiffs owe the City the duty to abate and that the City is entitled to restitution *1204 (Count X). Defendant was notified, by way of Potentially Responsible Party letters ("PRP letters")[6], of its potential liability to the states of Massachusetts and New Hampshire with respect to hazardous waste generation and disposal at the Cannons Sites. The states based this potential liability upon the following authority: Mass. Oil and Hazardous Material Release Prevention and Response Act, M.G.L. c. 21E, § 1 et seq.; Mass. Clean Water Act, M.G.L. c. 21; M.G.L. c. 12, § 11D; and, state common law concerning clean-up costs on the Cannons Engineering Corp.'s Hazardous Materials sites in Bridgewater and Plymouth, Mass.; New Hampshire statutes R.S.A. Chs. 147-A and 147-B (authority to expend state money to clean up sites) through CERCLA, 42 U.S.C. § 9601 et seq. (authority to seek indemnification for monies spent); and, state common law authorizing site clean up.
Under the policies in effect during all relevant time in the instant case, plaintiff provided coverage to defendant "for all sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies, caused by an occurrence...." Plaintiff argues that the Review Avenue action and notification from the Mass. DEQE and N.H.EPB seek only equitable relief indistinguishable from claims under CERCLA for clean-up costs.[7] Plaintiff cites NEPCCO as authority for its position as well as state and United States District Court decisions from other jurisdictions.
Defendant argues, in opposition, that irrespective of this Court's previous ruling on CERCLA clean-up costs constituting equitable damages and therefore not covered under the CGL policies, plaintiff was obligated to defend and investigate because the complaints and PRP letters alleged facts reasonably covered by the policies language. Defendant also argues that plaintiff's agreement to defend and investigate while reserving its right to disclaim coverage, acted as a waiver of any right to deny coverage. Defendant concludes by arguing that plaintiff owes defendant a duty to defend for the period starting with the filing of the cases and ending November 16, 1988, when plaintiff filed the instant action.
In NEPCCO, the majority concluded that federal and state government's claims for clean-up costs under CERCLA, § 170(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A) and RCRA, § 7003(a), 42 U.S.C. § 6973(a) are equitable actions for monetary relief in the form of restitution or reimbursement of costs and are, therefore, not claims for "damages" under the CGL policies. NEPCCO, 842 F.2d at 987. The court did not, however, rule on private or state government causes of action praying for damages arising by operation of restitution for abatement of a public or statutory nuisance or an ultrahazardous or abnormally dangerous activity.
In the opinion of this Court, the causes of action contained in the Landfills Sites (Counts II, III, IV, V and VI), the Review Avenue complaints (Counts IV, VI, VIII and X) and the Cannons sites PRP letters, as referenced above, seek either reimbursement/restitution or payment of clean-up costs associated with the clean up of the various sites.[8] Although the causes of action are based on state statute or common law, rather than CERCLA, the relief sought is still equitable in nature.
*1205 Consequently, being guided by the NEPCCO ruling, such causes of action seek damages that are equitable in nature, not legal and are, therefore, not covered by the CGL policies. NEPCCO, 842 F.2d at 987; Maryland Casualty Co. v. Ormond, No. 97-3038, slip op. at 12 (W.D.Ark. January 6, 1989). Plaintiff is, therefore, entitled to summary judgment with respect to its duty to defend and/or indemnify defendant for payments made for settlement and in defense of state statutory and common law claims premised on public and statutory nuisance abatement, defendant's negligence, and damages resulting from activities labeled as ultrahazardous or abnormally dangerous.

D. REMAINING SITESSTATE AND FEDERAL CLAIMS FOR NATURAL RESOURCE DAMAGES
In the third party complaint against defendant in the Landfills action, the third party plaintiff generally prayed for reimbursement of any and all costs, damages or equitable relief which the City may seek to recover in its action against the third party plaintiff. The City prayed for damages to its natural resources pursuant to CERCLA § 107(a) (Count III); and for damages for injury to the natural resources of the City among other past and future clean-up costs (Counts II, IV and VI). Defendant was advised by the Mass.DEQE and the N.H.EPB of its potential liability for damaging the state's natural resources on the Cannons Engineering Corp. sites in Massachusetts and New Hampshire.[9] In the third party complaint by certain defendants in the Review Avenue suit, third party plaintiffs generally prayed for any costs, damages, or equitable relief which the City seeks to recover in its action against third party plaintiffs. The City prayed for damages to its natural resources pursuant to CERCLA § 107(a) (Count II); and for damages for injury to the natural resources of the City among other past and future incurred clean-up costs (Counts IV, VI and VIII).

i. Classifying Damages to Natural Resource

The complaints and PRP letters filed against and sent to defendant seek damages, past and future, for natural resource destruction.[10] The Eighth Circuit in NEPCCO explicitly held that claims premised on damages to natural resources, CERCLA § 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A), asserted by private individuals are claims for "damages", not cleanup costs, and are covered within the terms of the CGL policies in the case. NEPCCO, 842 F.2d at 987. The Eighth Circuit court panel previously held and supported by the en banc decision, that "[the court] agree(s) with the position taken in Mraz, Lansco and Kutsher's[11] that the improper release of toxic wastes may cause `property damages' not only to the actual owner of the land, water, or air, but also to state and federal governments because of their interests in all the earth and air within [their] domain." Continental Ins. Cos. v. Northeastern Pharmaceutical & Chem. Co., 811 F.2d 1180, 1187 (8th Cir.1987) citing Georgia v. Tennessee Copper Co., 206 U.S. 230, 237, 27 S.Ct. 618, 619, 51 L.Ed. 1038 (1907); see also Travelers Ins. Co. v. Waltham Industrial Laboratories Corp., 722 F.Supp. 814, 823 (D.Mass.1988), aff'd in part, 883 F.2d 1092 (1st Cir.1989) (government can sue for property damage when natural resources are damaged and such *1206 action is for legal damages); Aetna Casualty & Surety v. Gulf Resources & Chem. Corp., 709 F.Supp. 958, 962 (D.Idaho 1989) (natural resource damage likely to be covered under CGL policy as legal damages).
Defendant has indicated that the Landfills Site action was dismissed with prejudice with respect to it pursuant to a settlement agreement that posed no financial or other duty on defendant. In addition, the parties have stipulated and produced evidence establishing that the Review Avenue site litigation was settled pursuant to a settlement agreement that provided for defendant's payment for its proportionate clean-up costs. In return for defendant's payment, the City of New York dismissed all claims against the third party plaintiffs concerning the damages to the City's natural resources. Consequently, no duty to indemnify defendant arose on the part of plaintiff for damages to the City's natural resources in either the Landfills Sites or the Review Avenue suits. Defendant did, however, incur expenses attributable to defending the claim of damaging the City's natural resources in both the Landfills Sites and the Review Avenue suits.
With respect to the Cannons sites, the Mass.DEQE and the N.H.EPB were seeking defendant to pay for damages to their natural resources. However, in the settlement documents, the agencies agreed not to sue defendant for damaging the natural resources of their respective states if defendant paid their proportionate cleanup costs for the sites, which was completed. Since no suit was filed, no duty to defend arose on the part of plaintiff. Secondly, since payment under the settlement was made solely for clean-up of the sites and the Mass.DEQE and N.H.EPB agreed not to sue defendant for damages to the states' natural resources, plaintiff's duty to indemnify never arose with respect to defendant's damage to Massachusetts and New Hampshire natural resources at the Cannons sites.
Consequently, plaintiff's duty to defend defendant arose with respect to the City of New York's claims of defendant's damage to the City's natural resources regarding the Landfills Sites and Review Avenue site. The Court is, however, required to consider whether or not any policy provision(s) exempts plaintiff from providing such defense.

ii. Pollution Exclusion

Plaintiff's duty to defend, although arising, may or may not be excluded under the terms of the CGL insurance policies. The policies provided coverage for damages incurred by the insured for property damage and further excluded coverage under the pollution exclusion clause, as follows:
This insurance does not apply:
To bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalies, toxic chemicals, liquids, or gases, wastes materials or other irritants, contaminants, all pollutants into or upon land, the atmosphere or any water course or body of water, ...
The Pollution Exclusion further provides that insurance coverage excluded by the pollution exclusion:
... does not apply if such discharge, dispersals, release or escape is sudden and accidental.
An insurer's duty to defend and to indemnify are not coextensive; the duty to defend is broader and arises when the underlying complaint, compared with relevant policy provisions, alleges facts covered or potentially covered by the policy. Zipkin v. Freeman, 436 S.W.2d 753, 763 (Mo.1968); Missouri Terrazzo Co. v. Iowa Nat. Mut. Ins. Co., 740 F.2d 647, 652 (8th Cir.1984). The standard for determining whether an insurer owes a duty to defend is based on a comparison of the policy language with the allegations of the plaintiff's complaint(s), and when those allegations state a claim which is potentially or arguably within the policies coverage, then the insurer must defend the suit. Howard v. Russell Stover Candies, Inc., 649 F.2d 620, 623 (8th Cir.1981). An insurer cannot ignore actual facts which it is aware of in determining its obligation to defend. State *1207 ex rel. Inter-State Oil v. Bland, 354 Mo. 622, 190 S.W.2d 227, 229 (1945). Under Missouri law, provisions designed to restrict coverage are to be construed most strongly against the insurer and to the favor of the insured, Aetna Casualty & Surety Co. v. Haas, 422 S.W.2d 316, 321 (Mo.1968), and the insurer bears the burden of expressing its intention within such clauses by clear and unambiguous terms. Id.; Giokaris v. Kincaid, 331 S.W.2d 633, 639-640 (Mo.1960); Citizens Ins. Co. v. Kansas City Commercial Cartage, Inc., 611 S.W.2d 302, 307 (Mo.Ct.App.1980); Missouri Terrazzo Co. v. Iowa Nat. Mut. Ins. Co., 740 F.2d 647, 652 (8th Cir.1984).
Plaintiff argues that the only issue remaining is whether the releases on the Landfills Sites and Review Avenue site were sudden and accidental. Plaintiff suggests that the releases were deliberate, while stipulating that between January 30, 1976 and May 25, 1976 defendant contracted with Northeast Oil, a waste disposal company owned by Russell Mahler, to dispose of 300,000 gallons of bilge water from its Electric Boat Facility in Groten, Connecticut in the Review Avenue site. The parties' stipulation states that Russell Mahler pleaded guilty to conspiring to bribe a New York City Department of Sanitation employee for the purpose of unlawfully disposing of the bilge water at the Landfills Sites. In addition, the parties stipulate that the Review Avenue site, utilized by Russell Mahler for waste disposal, was used for storage of toxic wastes and that many of the tanks on the site were leaking or overflowing and spilling their contents onto the ground, that spills occurred during the transfer of the wastes from the trucks to the tanks and that the tanks were deteriorating.
Plaintiff further argues that the releases on the Landfills Sites and Review Avenue site were not sudden. Plaintiff argues that the term "sudden" as used in the policy is unambiguous and means instantaneous or abrupt, containing a temporal aspect of immediacy, abruptness, suddenness, quickness and brevity, citing numerous federal and state court cases. Plaintiff concedes that no court in Missouri has ruled on this matter.
Defendant argues, in opposition, that plaintiff does not dispute that the releases on the Landfills Sites and Review Avenue site were accidental as to defendant. Defendant suggests, therefore, that the only issues remaining are whether the releases were sudden and whether the term "sudden" is ambiguous, since it is subject to more than one meaning and therefore should be defined as meaning unexpected and unintentional when viewed in light of the case law and extraneous materials offered by defendant. Defendant also cites several federal and state cases supporting its position. Defendant argues that the term "sudden and accidental" restates the definition of "occurrence", which negates any temporal significance implied by the term sudden, relying on Benedictine Sisters of St. Mary's Hospital v. St. Paul Fire & Marine Ins. Co., 815 F.2d 1209, 1211 (8th Cir.1987). Defendant also argues that the pollution exclusion bars coverage only for intentional pollution events, citing numerous federal and state court cases in support thereof. Last, defendant argues that Missouri law imposed on plaintiff a duty to defend it in the underlying actions since each arguably stated a claim under the insurance policies.

A. "Occurrence" and "Accident"
Based on the parties' stipulation and attached documentation, defendant contracted with a hazardous waste transporter for the disposal of hazardous waste without any knowledge that the wastes were designated to be disposed of illegally or stored improperly. Consequently, the subsequent releases of toxic or hazardous wastes at the Landfills Sites and the Review Avenue site constituted an "occurrence" as defined in the insurance policies,[12] since the evidence establishes that defendant neither expected nor intended *1208 the illegal and improper activity of the hazardous waste transporter that resulted in hazardous waste contamination.
In addition, the Missouri courts have established that the meaning of the term "accidental" is an event that takes place without one's foresight or expectation and is not bounded to an event which occurs suddenly. See Murphy v. Western & Southern Life Ins. Co., 262 S.W.2d 340, 342 (Mo.Ct.App.1953); St. Paul Fire & Marine Ins. Co. v. Northern Grain Co., 365 F.2d 361, 364 (8th Cir.1966). Thus, an accident includes that which happens by chance or fortuitously, without intention or design, and which is unexpected and unforeseen. Id. Consequently, this Court is of the opinion that the releases of toxic or hazardous wastes at the Landfills Sites and the Review Avenue site constituted an accidental event as to defendant.

B. Defining "Sudden"
The Court first notes that the Eighth Circuit, in Benedictine Sisters, 815 F.2d at 1211, did not establish a definition for the term "sudden" as used in CGL insurance policies. The court merely held that applying South Dakota law, a "sudden accident" is an unambiguous term that is defined to mean an event neither expected nor intended by the insured. Id. Consequently, the Eighth Circuit did not render an opinion on the definition of the CGL pollution exclusion exception term "sudden and accidental".
Missouri courts give the terms of an insurance policy their plain meaning. Harrison v. MFA Mutual Ins. Co., 607 S.W.2d 137 (Mo.1980). In an insurance policy, ambiguity arises when there is duplicity, indistinctness or uncertainty of meaning, or when the policy is reasonably and fairly open to different constructions. Nixon v. Life Investors Ins. Co., 675 S.W.2d 676, 679 (Mo.Ct.App.1984); Pearce v. Gen. American Life Ins. Co., 637 F.2d 536, 539 (8th Cir.1980).
The Court finds the insurance policies at issue in the instant case do not define the term sudden within its terms. Further, it appears to this Court that there exists no single plain meaning of the term "sudden" as used in the instant CGL policies. The Court finds persuasive that each party has placed distinct yet reasonable definitions on the term and the fact that recognized dictionaries differ as to the primary meaning of the term.[13] It is therefore the opinion of this Court that the term "sudden" as used in the CGL policy Pollution Exclusion exception clause is reasonably susceptible to different meanings and is, therefore, ambiguous.
In Missouri, the court's role in interpreting a contract is to determine the intention as manifest by the document, and not by what the parties now say they intended; however, in that inquiry the court is justified in considering more than circumstances at the time of contracting and the positions and actions of the parties are relevant to judicial interpretation of the contract. Press Machinery Corp. v. Smith R.P.M. Corp., 727 F.2d 781, 784-785 (8th Cir.1984); Tri-Lakes Newspapers, Inc. v. Logan, 713 S.W.2d 891, 893 (Mo.Ct.App. 1986) (Relevant matters outside the insurance contract may be considered when interpreting insurance policies). Ambiguities will be construed against the insurer when interpreting insurance policies. Robin v. Blue Cross Hospital Serv., Inc., 637 S.W.2d 695, 698 (8th Cir.1982). Interpretation in the insured's favor is particularly appropriate if an ambiguity arises in an exclusion, since the insurer there attempts to limit/exclude the insured's coverage. See Meyer Jewelry Co. v. General Ins. Co., 422 S.W.2d 617, 623 (Mo.1968); Greer v. Zurich Ins. Co., 441 S.W.2d 15, 30 (Mo. 1969) (An insurance contract is designed to furnish protection and will, where reasonably possible, be construed to accomplish this object.).
The Pollution Exclusion clause has been the subject of a significant number of recent *1209 judicial holdings and comments in other jurisdictions. There is a sharp division between the various courts that have ruled on the issue of whether the term "sudden", as used in the Pollution Exclusion, is or is not ambiguous. Courts generally have taken one of three approaches in interpreting the clause: 1) finding the clause ambiguous and holding that the insurance company has a duty to defend and/or indemnify the insured as a matter of law; Lansco, Inc. v. Department of Environmental Protection, 350 A.2d at 524-525 (Pollution Exclusion clause ambiguous and since the pollution event was neither expected nor intended by the insured, the pollution event caused by a third party was sudden and accidental)[14]; 2) defining "sudden and accidental" as meaning unintended injury or harm and that coverage should be excluded if the insured knew or should have known that its activities were causing or could cause the injury alleged; Jackson Township Municipal Utilities Authority v. Hartford Acci. & Indem. Co., 186 N.J.Super. 156, 451 A.2d 990 (1982) (Pollution Exclusion clause ambiguous and is a restatement of the definition of occurrence);[15] or, 3) finding that the clause is unambiguous and so long as the insured did not intend the pollution event which caused injury, the pollution event was not "sudden and accidental" as defined by a temporal meaning, and therefore, the insurer is not obligated to defend and/or indemnify the insured. Waste Management of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 696-701, 340 S.E.2d 374, 381-383, reh'g denied, 316 N.C. 386, 346 S.E.2d 134 (1986).[16] In addition, recognized dictionaries differ in the primary meaning of the word, and the insurance industry itself has allocated different meanings to the word at different times.[17]
This Court is of the opinion that plaintiff failed to establish that the parties intended that the term "sudden" mean anything other than all accidental pollution occurrences causing injury where the pollution event was neither expected nor intended by defendant. In addition, the drafting history of the Pollution Exclusion clause evidences that the Insurance Rating Board and plaintiff drafted the clause intending to exclude coverage only from accidental pollution occurrences. Such a definition reaffirms the principal that coverage will not be provided for intended acts and intended results of such acts, but will be extended for unintended results of an intentional act, without reference to a temporal component of such occurrences, even if such act was performed by a third party. See Jackson Township, 451 A.2d at 994. Coverage, therefore, under CGL policies should be extended so long as the insured did not intentionally injure or damage a third party with the pollution activity, or cause injury and/or damage to the third party when the insured should have known that the polluting activity could likely result in such an *1210 outcome. Plaintiff did not claim or establish that defendant was willfully negligent or knowledgeable of its contracted waste transporter's dumping and improper storage of the hazardous wastes with respect to the Landfills Sites and Review Avenue site. Further, the Court finds that plaintiff's decision to defend while reserving its right to withdraw coverage in the Review Avenue and Landfills sites litigation satisfied its initial duty under Missouri law to participate in defendant's defense and did not waive its right to withdraw coverage. Brooner & Asso. Constr., Inc. v. Western Casualty & Surety Co., 760 S.W.2d 445, 446-447 (Mo.Ct.App.1988) (Liability insurer providing timely notice of reservation of rights to assert non-liability and expressing reasons therefor does not waive its right to claim that it would not be liable for payment of any judgment against the insured.).
The Court is also of the opinion that the frequency of dumping or leakage is not dispositive of the issue of whether the occurrence was sudden and accidental, regardless of how many deposits or dispersals or spills may have occurred. Although the permeation of pollution into the ground damaging the natural resources may have been gradual rather than instantaneous, the behavior of the pollutants or their seepage into the ground is accidental if the permeation was unexpected. See Jackson Township, 451 A.2d at 994. It is contrary to reason to find that a CGL policy would cover a waste generator contracting with a waste transporter if the waste transporter dumped the entire load of waste onto the ground which destroyed natural resources, while excluding coverage for a waste generator that had no knowledge of the destruction of natural resources occurring on a storage site over a period of time. As far as the insured is aware in either case, the waste was to be disposed of in a proper manner. Each drop of waste hitting the ground at the storage or dumping site, of which the waste generating insured is not aware, that results in the damaging natural resources, would be sudden to the waste generating insured. The continued gradual leakage, therefore, would speak only to degree and not to liability. Consequently, defendant's liability for natural resource destruction attached when the first drop of waste hit the ground and damaged the natural resources. The relative degree or quantity of the release and subsequent natural resource destruction did little to alter the already ripened CERCLA and/or state common law natural resource destruction liability.
Consequently, defendant is entitled to summary judgment with respect to plaintiff's duty to defend it in the Landfills Sites and Review Avenue litigation for damages to the natural resources of the City of New York.
Accordingly, the motion of plaintiff, Aetna Casualty and Surety Company, for summary judgment with respect to its duty to defend and/or indemnify defendant, General Dynamics Corp., for liability arising by way of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601 et seq. for hazardous waste clean-up costs concerning the The City of New York v. Exxon Corp., No. 85 Civ. 1939 (EW) action, is GRANTED.
Further, the motion of plaintiff, Aetna Casualty and Surety Company, for summary judgment with respect to its duty to defend and/or indemnify defendant, General Dynamics Corp., for liability arising by way of state statute for hazardous waste clean-up costs concerning the The City of New York v. United Technologies Corp., No. 85 Civ. 4665 (EW); The City of New York v. Exxon Corp., No. 85 Civ. 1939 (EW) actions; and, the Cannons Engineering Corp. sites, is GRANTED.
Further, the motion of plaintiff, Aetna Casualty and Surety Company, for summary judgment with respect to its duty to defend defendant, General Dynamics Corp., for liability arising by way of state common law claims premised on nuisance, abatement of nuisance, negligence, ultrahazardous and/or abnormally dangerous activity, and statutory public nuisance contained in the The City of New York v. United Technologies Corp., No. 85 Civ. *1211 4665 (EW); The City of New York v. Exxon Corp., No. 85 Civ. 1939 (EW) actions, is GRANTED.
Further, the motion of plaintiff, Aetna Casualty and Surety Company, for summary judgment with respect to its duty to indemnify defendant, General Dynamics Corp., for liability arising by way of state common law claims premised on nuisance, abatement of nuisance, negligence, ultrahazardous and/or abnormally dangerous activity, and statutory public nuisance contained in the The City of New York v. United Technologies Corp., No. 85 Civ. 4665 (EW); The City of New York v. Exxon Corp., No. 85 Civ. 1939 (EW) actions; and, the Cannons Engineering Corp. sites, is GRANTED.
Further, the motion of defendant, General Dynamics Corp., for summary judgment with respect to plaintiff, Aetna Casualty and Surety Company's, duty to defend General Dynamics Corp., in the The City of New York v. United Technologies Corp., No. 85 Civ. 4665 (EW) and The City of New York v. Exxon Corp., No. 85 Civ. 1939 (EW) actions concerning claims for damaging the City's natural resources, is GRANTED.
Further, the motion of defendant, General Dynamics Corp., for summary judgment with respect to plaintiff, Aetna Casualty and Surety Company's, duty to indemnify General Dynamics Corp., in The City of New York v. United Technologies Corp., No. 85 Civ. 4665 (EW), The City of New York v. Exxon Corp., No. 85 Civ. 1939 (EW) and the Cannons Engineering Corp. sites notices, concerning claims for damaging the City's and states' natural resources, is DENIED.
Further, the motion of plaintiff, Aetna Casualty and Surety Company, for summary judgment with respect to all remaining issues is DENIED.
Last, the motion of defendant, General Dynamics Corp., for summary judgment with respect to all remaining issues is DENIED.
NOTES
[1] For a more detailed factual summary, refer to this Court's December 12, 1989; April 9, 1990; and August 24, 1990 Orders.
[2] The Conservation Chemical site in Kansas City, Missouri; five New York City Landfill sites in New York, New York; the Review Avenue site in New York, New York; the Cannons Engineering Corporation sites made up of the Bridgewater, Massachusetts site, the Cordage Park site in Plymouth, Massachusetts, the Tinkham's Garage site in Londonderry, New Hampshire, and the Sylvester site in Nashua, New Hampshire; the Conservation Chemical Company site in Gary, Indiana; The Tucson Airport site in Tucson, Arizona; the Quincy Shipyard site in Quincy, Massachusetts; the Maxey Flats Nuclear site in Morehead, Kentucky; and the Norwich Iron and Metal Company site in Norwich, Connecticut.
[3] The Cannons Engineering Corporation sites include the following, as per the parties April 9, 1990 stipulation: site located in Bridgewater, Massachusetts; the Tinkham's Garage site located in Londonderry, New Hampshire; the Cordage Park site located in Plymouth, Massachusetts; and, the Sylvester site in Nashua, New Hampshire.
[4] The Court reserved ruling on plaintiff's summary judgment motion based on the parties' assurances that the Landfills litigation was pending.
[5] Defense costs are not at issue for the Cannons Sites since no "suit" was filed, as determined in the Court's December 12, 1989 Memorandum and Order, page 17.
[6] March 31, 1986 letter from the Department of Environmental Quality Engineering of the State of Massachusetts (Mass.DEQE) concerning the Cannons Engineering Corp.'s sites located in Bridgewater and Plymouth, Massachusetts. April 1, 1986 letter for the Environmental Protection Bureau of the State of New Hampshire (N.H.EPB) concerning the Cannons Engineering Corp.'s sites in Nashua and Londonderry, New Hampshire.
[7] The parallel duty to defend provision of the policies states: "... the company shall have the right and duty to defend any suit against the insured seeking damages on account of such ... property damage, even if any of the allegations of the suit are groundless, false or fraudulent...."
[8] Counts II, III, IV and VI of the Third Party complaint in the Landfills Sites action and Counts IV, VI and VIII of the Third Party complaints in the Review Avenue action also contain prayers for damages for the destruction of the City of New York's natural resources. The Court considers such claims as seeking distinct relief and as such will consider them separately below.
[9] Defendant was notified by the PRP letters from the state agencies that as a potentially responsible party it may be liable for costs not limited to, expenditures for investigation, planning, clean up and enforcement activities. Subsequent settlement documents refer specifically to damages to natural resources as a subject which the United States EPA, Mass.DEQE and N.H.EPB consented not to sue or take any other action upon the payment of the settlement amounts by defendant.
[10] Although the N.H.EPB PRP letter did not expressly state this, the subsequent settlement documentation so stated.
[11] Mraz v. American Universal Ins. Co., 616 F.Supp. 1173 (D.Md.1985); Lansco, Inc. v. Department of Environmental Protection, 138 N.J.Super. 275, 350 A.2d 520 (1975), aff'd, 145 N.J.Super. 433, 368 A.2d 363 (1976), cert. denied, 73 N.J. 57, 372 A.2d 322 (1977); Kutsher's Country Club Corp. v. Lincoln Ins. Co., 119 Misc.2d 889, 465 N.Y.S.2d 136 (1983).
[12] Occurrence  means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.
[13] Black's Law Dictionary at 1600 (West Pub., 4th ed. 1968) (That which happenings without previous notice); Webster's Third New International Dictionary (G. & C. Merriam Co. 1976) (That which occurs unexpectedly).
[14] Farm Family Mutual Ins. Co. v. Bagley, 64 A.D.2d 1014, 409 N.Y.S.2d 294 (4 Dep't 1978) (Pollution Exclusion clause ambiguous and pollution event could have been unintended); All-state Ins. Co. v. Klock Oil Co., 73 A.D.2d 486, 426 N.Y.S.2d 603 (4 Dep't 1980) (Pollution Exclusion clause ambiguous and regardless of initial intent of lack thereof, unintended damage constitutes an accident covered by the insurer.).
[15] See United States Fidelity & Guar. Co. v. Thomas Solvent Co., 683 F.Supp. 1139 (W.D.Mich.1988); Pepper's Steel & Alloys v. United States Fidelity & Guaranty Co., 668 F.Supp. 1541 (S.D.Fla.1987); United States v. Conservation Chem. Co., 653 F.Supp. 152 (W.D.Mo.1986); Primm v. State Farm Fire & Casualty Co., 426 So.2d 356 (La.App.2d Cir. 1983); Shapiro v. Public Serv. Mut. Ins. Co., 19 Mass.App.Ct. 648, 477 N.E.2d 146 (1985); Transamerica Ins. Co. v. Sunnes, 77 Or.App. 136, 711 P.2d 212 (1985); Buckeye Union Ins. v. Liberty Solvent & Chemicals Co., 17 Ohio App.3d 127, 477 N.E.2d 1227 (1984); United Pacific Ins. Co. v. Van's Westlake Union, Inc., 34 Wash.App. 708, 664 P.2d 1262 (1983).
[16] Other courts have begun to hold that the Pollution Exclusion clause is unambiguous: United States Fidelity & Guaranty Co. v. Morrison Grain Co., 734 F.Supp. 437 (D.Kan.1990) (quoting C.L. Hathaway & Sons, 712 F.Supp. 265, 268 (D.Mass.1989); International Minerals & Chemical Corp. v. Liberty Mut. Ins. Co., 168 Ill.App.3d 361, 119 Ill.Dec. 96, 522 N.E.2d 758 (1988); Fireman's Fund Ins. Cos. v. Ex-Cell-O Corp., 702 F.Supp. 1317 (E.D.Mich.1988); American Motorists Ins. Co. v. General Host Corp., 667 F.Supp. 1423 (D.Kan.1987).
[17] See footnote 13.